In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 05-4219

ROSEMARY SYLVESTER,

*Plaintiff-Appellant*,

*v.*

SOS CHILDREN'S VILLAGES ILLINOIS, INC.,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 2946—**Ronald A. Guzmán**, *Judge*.

---

ARGUED JUNE 13, 2006—DECIDED JULY 12, 2006

---

Before POSNER, COFFEY, and RIPPLE, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff, Rosemary Sylvester, appeals from the grant of summary judgment to her former employer in this suit for sex discrimination and retaliation under Title VII. The claim of sex discrimination has no possible merit, and we affirm its dismissal. The claim of retaliation presents a more difficult issue.

The plaintiff's claim that she was retaliated against, in violation of 42 U.S.C. § 2000e-3(a); see *Fine v. Ryan Int'l Airlines,* 305 F.3d 746, 752-53 (7th Cir. 2002); *Abramson v. William Paterson College,* 260 F.3d 265, 287-88 (3d Cir. 2001);

*Sumner v. United States Postal Service*, 899 F.2d 203, 209 (2d Cir. 1990), for opposing sex discrimination in the form of sexual harassment depends entirely on circumstantial evidence; and we must first consider whether and in what sense such evidence can be used to prove retaliation (or other forms of discrimination, but we confine our discussion to retaliation). The usual way in which a plaintiff tries to establish a prima facie case (that is, a case strong enough to withstand summary judgment for the defendant) of retaliation is by an adaptation of the *McDonnell Douglas* test. As explained in *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 644 (7th Cir. 2002), this "requires the plaintiff to show that after filing the charge [or otherwise opposing the employer's allegedly discriminatory practice] only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner." This method of establishing a prima facie case requires proof both of similarly situated employees and of the plaintiff's performing his job satisfactorily.

This method is called "indirect"; the alternative—the "direct"—method of establishing a prima facie case of retaliation requires the plaintiff "to present direct evidence (evidence that establishes without resort to inferences from circumstantial evidence) that he engaged in protected activity (filing a charge of discrimination) and *as a result* suffered the adverse employment action of which he complains." *Id*. at 644 (emphasis added). This method is ordinarily more onerous because of the phrase that we have italicized, but it is the plaintiff's only recourse if he (in this case she) cannot prove that a similarly situated employee who did oppose the employer's practice was not fired or otherwise treated as badly as the plaintiff was.

Read literally, the passage just quoted from *Stone* would defeat Sylvester's use of the "direct" method because the passage says that the method requires "direct *evidence*," defined in the passage as "evidence that establishes [a proposition] without resort to inferences from circumstantial evidence." This is a misleading dictum. What is true is that the direct method does not utilitize the specific circumstantial evidence that the plaintiff presents when he uses the indirect method of establishing discrimination. But if he can prove by means of circumstantial evidence "that he engaged in protected activity (filing a charge of discrimination) and as a result suffered the adverse employment action of which he complains," that is fine, as most of our cases, sensibly disregarding the dictum in *Stone*, properly assume. *Culver v. Gorman & Co.,* 416 F.3d 540, 545-56 (7th Cir. 2005); *Lang v. Illinois Dep't of Children & Family Services,* 361 F.3d 416, 419 (7th Cir. 2004); *Volovsek v. Wisconsin Dept. of Agriculture, Trade & Consumer Protection*, 344 F.3d 680, 689 (7th Cir. 2003); *Sitar v. Indiana Dept. of Transportation,* 344 F.3d 720, 728-29 (7th Cir. 2003); *Rogers v. City of Chicago,* 320 F.3d 748, 753 (7th Cir. 2003); but see *Hudson v. Chicago Transit Authority,* 375 F.3d 552, 559-60 (7th Cir. 2004). And likewise the cases in other circuits. *Gronowski v. Spencer,* 424 F.3d 285, 293 (2d Cir. 2005); *Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1010 (8th Cir. 2005); *Poole v. County of Otero,* 271 F.3d 955, 961 (10th Cir. 2001); *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004). See also *Wright v. Southland Corp.*, 187 F.3d 1287, 1294-1303 (11th Cir. 1999), equating the direct method to direct evidence but defining direct evidence to include circumstantial evidence.

The distinction between direct and circumstantial evidence is vague, 1 John H. Wigmore, *Evidence* § 25, at p. 953, but more important it is irrelevant to assessing the strength of a party's case. *In re High Fructose Corn Syrup Antitrust*

*Litigation,* 295 F.3d 651, 661-62 (7th Cir. 2002). From the relevant standpoint—that of probative value—" 'direct' and 'circumstantial' evidence are the same in principle." *Achor v. Riverside Golf Club*, 117 F.3d 339, 341 (7th Cir. 1997); see *Holland v. United States*, 348 U.S. 121, 140 (1954).

The conventional distinction is that direct evidence is testimony by a witness about a matter within his personal knowledge and so does not require drawing an inference from the evidence (his testimony) to the proposition that it is offered to establish, whereas circumstantial evidence does require drawing inferences. 1 Wigmore, *supra*, §§ 25-26, at pp. 953-65; Lyman R. Patterson, "The Types of Evidence: An Analysis," 19 *Vand. L. Rev.* 1, 11-14 (1965). By that standard, even a documentary admission is circumstantial evidence, because the genuineness of the document must be inferred before the admission can be credited. But actually all evidence, even eyewitness testimony, requires drawing inferences; the eyewitness is drawing an inference from his raw perceptions. "All evidence is probabilistic, and therefore uncertain; eyewitness testimony and other forms of 'direct' evidence have no categorical epistemological claim to precedence over circumstantial or even explicitly statistical evidence." *Milam v. State Farm Mutual Automobile Ins. Co.,* 972 F.2d 166, 170 (7th Cir. 1992). Perhaps on average circumstantial evidence requires a longer chain of inferences, but if each link is solid, the evidence may be compelling—may be more compelling than eyewitness testimony, which depends for its accuracy on the accuracy of the eyewitness's recollection as well as on his honesty.

A residual suspicion of circumstantial evidence in discrimination (including retaliation) cases is perhaps reflected in the frequent references in decisions of this court to "a convincing mosaic of circumstantial evidence" as an

alternative "direct" method to direct evidence of establishing the prima facie case. E.g., *East-Miller v. Lake County Highway Dept.,* 421 F.3d 558, 564 (7th Cir. 2005); *Isbell v. Allstate Ins. Co.,* 418 F.3d 788, 794 (7th Cir. 2005); *Grimm v. Alro Steel Corp.,* 410 F.3d 383, 385 (7th Cir. 2005); *Rhodes v. Illinois Dept. of Transportation,* 359 F.3d 498, 504 (7th Cir. 2004). The phrase first appeared in *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994), where it was used, innocently enough, to describe the "kind of circumstantial evidence . . . that consists of ambiguous statements, suspicious timing, discrimination against other employees, and other pieces of evidence none conclusive in itself but together composing a convincing mosaic of discrimination against the plaintiff." A mosaic is a work of visual art composed of a large number of tiny tiles that fit smoothly with each other, a little like a crossword puzzle. A case of discrimination can likewise be made by assembling a number of pieces of evidence none meaningful in itself, consistent with the proposition of statistical theory that a number of observations each of which supports a proposition only weakly can, when taken as a whole, provide strong support if all point in the same direction: "a number of weak proofs can add up to a strong proof." *Mataya v. Kingston*, 371 F.3d 353, 358 (7th Cir. 2004).

But it was not the intention in *Troupe* to promulgate a new standard, whereby circumstantial evidence in a discrimination or retaliation case must, if it is to preclude summary judgment for the defendant, have a mosaic-like character. There is no rich mosaic of circumstantial evidence of retaliation in this case, but there is enough (though maybe barely enough) to preclude summary judgment.

The defendant operates homes for foster parents and children. Sylvester, the plaintiff, was one of four employees,

all women, who signed a long letter of complaint dated May 5, 2003, to Joseph Skender, the chairman of the defendant's board. The letter accused Job West, the defendant's chief executive officer, of abusing the signatories and other members of the defendant's staff by calling them "bitches" (a "narcissistic bitch," in the case of Sylvester), of "comment[ing] on the sexuality" of the defendant's female executive director, and of responding to an unwanted touching of a female staff member by one of the adolescent foster children by saying "I knew there would be problems with hiring a cute, young blond. She should toughen up." The letter accused West of other unprofessional behavior as well, but the accusations we have mentioned are the ones that relate to sex. We need not decide whether if true the accusations add up to a case of sexual harassment; the defendant does not argue that even if Sylvester was fired in retaliation for making them nevertheless she has no claim because West's alleged conduct is a frivolous basis for a charge of sexual harassment. *Clark County School District v. Breeden*, 532 U.S. 268 (2001) (per curiam); *Mattson v. Caterpillar, Inc.*, 359 F.3d 885 (7th Cir. 2004); *Sitar v. Indiana Dept. of Transportation*, *supra*, 344 F.3d at 727-28.

The board of directors met nine days later to consider the letter. Mark Roth, a board member who is a lawyer, described the letter as an attempt by two of the signatories, Sally Elstad and LeAnn Ryan, to stave off being fired for poor performance. The board decided that both should be fired, and they were. (They were coplaintiffs with Sylvester in this litigation, but settled during the course of it.). On May 19, the board's chairman plus Roth met with West and the three of them discussed the possibility of firing Sylvester for poor performance, even though she had received a positive performance evaluation shortly before. Roth testified that the chairman decided that Sylvester

"would not necessarily be terminated but that would be a decision for West to make when he met with her on the following day, based in part on her reaction to the terminations of Elstad and Ryan."

The next day West convened a meeting of the staff at which he announced Elstad's and Ryan's terminations. Afterwards Sylvester asked to speak with West. They met alone in his office for about five minutes. Accounts differ but Sylvester acknowledges the following: She said, "What guarantee do I have from you that you will stop talking about me in a profane, derogatory and untrue manner?" West denied having talked about her in such a manner and shortly afterwards told her the meeting was over and she should get out of his office. She replied, "I will, but just tell me one more thing—when you mentioned . . . [the meeting the night before] you failed to disclose that you had legal counsel present. Is it true that Mark Roth, your legal counsel, was also in attendance at that meeting?" West replied "Yes," and Sylvester said "Thank you" and left his office. He immediately fired her for being insubordinate.

If that was why he fired her, there was no retaliation. The question is whether a reasonable jury could find instead that she was fired because the letter she had signed accused West of sexual harassment, and toward her in particular (remember that it was she whom the letter charged West with having called a "narcissistic bitch"). There is no direct evidence, which would, as normally understood in a retaliation case, *Wright v. Southland Corp.*, *supra*, 187 F.3d at 1294, consist of an admission by West or other company officers that the motive for firing Sylvester was to retaliate for the complaint of sexual harassment in the letter she had signed. *Raymond v. Ameritech Corp.,* 442 F.3d 600, 610 (7th Cir. 2006); *Cardoso v. Robert Bosch Corp.,* 427 F.3d 429, 432-33 (7th Cir. 2005); *Venturelli v. ARC Community Services,*

*Inc.*, 350 F.3d 592, 599 (7th Cir. 2003); *Troupe v. May Dept. Stores Co.*, *supra*, 20 F.3d at 736; *Joyal v. Hasbro, Inc.*, 380 F.3d 14, 17 (1st Cir. 2004); *Haddon v. Executive Residence at White House*, 313 F.3d 1352, 1358-59 (Fed. Cir. 2002); *Portis v. First National Bank*, 34 F.3d 325, 329 (5th Cir. 1994). But there was the following circumstantial evidence. First, the prompt firing of two of the four signatories; it is undisputed that they were poor performers, but, if so, why were they not fired until shortly after they signed the letter accusing West of sexual harassment, an accusation that could get the company into trouble? Second, as there were no current performance issues with Sylvester, why was her performance brought up at the meeting at which the chairman of the board and the lawyer member, Roth, decided to fire Elstad and Ryan? And third, why was West authorized at that meeting to fire her not for performing her job badly but for reacting adversely to news of the firing of two of the cosignatories of the letter? A reasonable jury might conclude that she was being set up—that the defendant's officers who met the night before knew she was sure to be upset by the firings, and that West was being invited to interpret that predictable reaction as insubordination. Putting together these items of circumstantial evidence, a reasonable jury could conclude that the accusations of sexual harassment in the letter signed by Sylvester were a cause of her being fired. No more is necessary to show that she established a prima facie case using the "direct" method of proof.

The judgment is therefore reversed so far as the dismissal of the claim of retaliation is concerned, though affirmed with respect to the claim of sex discrimination, and the case is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART,
REVERSED IN PART, AND REMANDED.

A true Copy:

   Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*