UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted September 22, 2006
Decided December 14, 2006

Before

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 05-1788

| | |
|---|---|
| PAMELA JORDAN, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District |
| | of Indiana, Indianapolis Division. |
| *v.* | |
| | No. 01 C 1930 |
| MICHAEL CHERTOFF, SECRETARY, | |
| U.S. DEPARTMENT OF HOMELAND | Larry J. McKinney, |
| SECURITY, | *Chief Judge.* |
| *Defendant-Appellee.* | |

**O R D E R**

Pamela Jordan contended that her former employer, the United States Customs Service ("Customs"),[1] retaliated against her for complaining about alleged discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.  The district court granted summary judgment in favor of Customs,

---

[1]On March 1, 2003, the United States Customs Service became part of the Department of Homeland Security.  *See* Public Law 107-296.  Prior to that date, the United States Customs Service was an agency within the Department of the Treasury.

and we affirmed. *See Jordan v. Chertoff*, 160 Fed. Appx. 528 (7th Cir. 2005) (unpublished). Jordan then filed a petition for a writ of certiorari with the United States Supreme Court, and the Court remanded this matter to us for further consideration in light of its decision in *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405 (2006). *See Jordan v. Chertoff*, - - U.S. - - - -, 126 S. Ct. 2984 (2006). Because Jordan still cannot show that she suffered an actionable adverse action, we affirm the district court's grant of summary judgment in favor of Customs.

## I.  BACKGROUND

In 1988, the United States Customs Service hired Pamela Jordan, an African-American woman, to work as an accounting technician. Jordan worked at the National Finance Center in Indianapolis. The Center had four groups, including the Accounts Payable Group and the Financial Reporting and Analysis Group. During the time relevant here, Jordan worked in the Internal Recurring Obligation ("IRO") unit of the Accounts Payable Group. On several occasions, she requested a "detail" to the Forfeiture Fund Team ("FFT"), a unit in the Financial Reporting and Analysis Group. The term "detail" refers to a temporary assignment to a different position. While an employee serves on a detail, Customs considers the employee to occupy her regular position for pay purposes. At the conclusion of a detail, the employee returns to her regular position.

Customs granted Jordan's FFT detail request in February 1995 and assigned her to the FFT for 120 days. She then asked that Customs reassign her to the FFT permanently. Although Customs denied her request for permanent reassignment, it extended her FFT detail for an additional 120 days.

In the meantime, the IRO began to experience a substantial backlog in paying invoices for recurring services, its primary obligation. Invoice backlogs also traditionally rose higher during October and November with the beginning of the new fiscal year. And in October of 1995, the IRO was further burdened after losing the services of a summer intern and two clerks who had been detailed from another unit. As a result, the leader of the Accounts Payable Group requested that Jordan return to the IRO, and she did so.

Prior to the conclusion of her second detail on the FFT, Jordan requested overtime; a supervisor denied Jordan's overtime request. Customs permanently reassigned Jordan to the FFT in 1998, where she worked until she left Customs in 2001.

In her initial appeal to us in this case, Jordan maintained that Customs retaliated against her for filing administrative complaints by: (1) ending a temporary detail to the FFT; (2) failing to permanently reassign her to the FFT; and (3) denying her request for overtime on the FFT.

## II.  ANALYSIS

The anti-retaliation provision in Title VII prohibits an employer from taking actions that "discriminate against" an employee for "opposing" practices forbidden by Title VII or because she has "made a charge, testified, assisted, or participated in" a Title VII investigation, proceeding, or hearing.  42 U.S.C. § 2000e-2(a).  In *Burlington Northern*, the Supreme Court held that Title VII's anti-retaliation provision "does not confine the actions it forbids to those that are related to employment or occur at the workplace."  126 S. Ct. at 2409.  Rather, the Court stated, an employer can retaliate against an employee by taking actions that are not directly related to her employment or by causing her harm *outside* the workplace.  126 S. Ct. at 2412.  The Court also ruled that Title VII's anti-retaliation provision covers only those actions that a reasonable employee would find materially adverse.  *Id.* at 2409.

A.     Summary judgment in favor of Customs remains proper after *Burlington Northern*.

Jordan contends that in light of *Burlington Northern,* this court should remand this case to the district court to determine whether Jordan suffered an adverse action.  We disagree.

*Burlington Northern* did not eradicate the basic framework through which we evaluate a claim of retaliation under Title VII, as the essential inquiry remains whether an employee's protected activity constituted the reason for an employer's adverse action.  To set forth a prima facie case of retaliation under Title VII, Jordan must either: (1) show that after filing a charge (or otherwise opposing an employer's allegedly discriminatory practice), only she, and not any similarly situated employee who did not take protected action, was subjected to a materially adverse action even though she was performing her job satisfactorily; or (2) present evidence that she engaged in protected activity and as a result suffered the materially adverse action of which she complains.  *See Burlington Northern*, 126 S. Ct. at 2415; *Tomanovich v. City of Indianapolis*, 436 F.3d 656, 654, (7th Cir. 2006); *Sylvester v. SOS Children's Vills. Ill., Inc.*, 453 F.3d 900, 902-03 (7th Cir. 2006).

Under either formulation, Jordan must first demonstrate that she suffered an actionable adverse action.  *See Sylvester*, 453 F.3d at 902-03.  The Court in *Burlington Northern* made clear that to establish an actionable adverse action in claims of retaliation under Title VII, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" 126 S. Ct. at 2415.  In so holding, the Supreme Court agreed with the formulation this court had set forth in *Washington v. Illinois Department of Revenue*, 420 F.3d 658, 659-62 (7th Cir. 2005).  *Burlington Northern*, 126 S. Ct. at 2415.

As we consider Jordan's claims in light of *Burlington Northern*, we first note that Jordan only alleges that she suffered an employment-related adverse action, not an adverse action unrelated to her employment. As a result, *Burlington Northern*'s holding that actionable adverse actions may include those outside the workplace does not assist her in this case.

Next, as Jordan highlights, the Court in *Burlington Northern* also made clear that a reassignment of duties may constitute retaliatory discrimination, even when the duties at both the former and present positions fall within the same job description. 126 S. Ct. at 2416. "Whether a particular assignment is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" *Id.* at 2417 (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

The Court's *Burlington Northern* decision does not aid Jordan here, as no reasonable employee could have found any action of which she complains materially adverse. First, Jordan contends that Customs retaliated against her when it did not permanently reassign her to the FFT. Yet it is undisputed that there was no available position on the FFT to which she could be reassigned. Jordan also maintains that Customs retaliated against her when it did not extend her temporary detail on the FFT. Details to the FFT are temporary, however, and Jordan remained formally assigned to the IRO unit throughout her temporary assignment on the FFT. Moreover, she had already received an extension to her initial 120-day detail to the FFT. Finally, Jordan contends that Customs retaliated against her when it did not grant her overtime. Although her request for overtime on the FFT was not granted, Jordan was not forever denied overtime. Rather, she continued to work overtime when she returned to the IRO, where her rate of pay was identical to that she received while on the FFT detail.

Jordan has failed to establish that her return to her regular position on the IRO could have been materially adverse to a reasonable employee. Unlike the employee in *Burlington Northern* who was reassigned to a position with less desirable duties, Jordan enjoyed her temporary placement on the FFT. Although she wishes her permanent reassignment to the FFT had taken place sooner, no positions were available at the time. Jordan has not demonstrated that Customs took a materially adverse action, and her retaliation claim cannot stand.

B.      Jordan may not raise new claims.

Jordan also contends that when she was finally assigned to the FFT, she was assigned to perform cashier duties.  She maintains these duties were "even lower" duties than those she had previously performed.   Jordan, however, has not previously raised this claim to this court.  As a result, this claim is waived. *See Gibson v. West*, 201 F.3d 990, 992 (7th Cir. 2002).

### III.  CONCLUSION

Because Jordan has not set forth a prima facie case of retaliation under Title VII, the judgment of the district court is AFFIRMED.