In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-2032

JAMES P. BRENEISEN, JR., *et al.*,

*Plaintiffs-Appellants,*

*v.*

MOTOROLA, INC., *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 02 C 50509—**Philip G. Reinhard**, *Judge.*

ARGUED MAY 29, 2007—DECIDED JANUARY 15, 2008

Before BAUER, WOOD, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* James Breneisen, Jr., Barbara Breneisen, Laura Jones, Anna Lineweaver, Jennifer Horton, and Amy Boonos claim that their supervisors at Motorola, Inc.'s Service Center in Rockford, Illinois penalized them for taking medical leave under the Family and Medical Leave Act (FMLA).[1] They say that they were demoted, denied raises, questioned upon return

---

[1] We refer to the plaintiffs by the names used in their complaint before the district court although some of the plaintiffs have since taken new surnames. To avoid confusion, we refer to the Breneisens by their first names.

from leave, and given negative performance evaluations. To support their allegations, they offer the declarations of twenty-three others who claim that Motorola discriminated against persons using FMLA leave. In 2002, the plaintiffs sued Motorola and several individual defendants claiming discrimination and retaliation in violation of the FMLA, as well as intentional infliction of emotional distress (IIED). James also alleged that he was denied his right to be reinstated to his previous position or an equivalent one when he returned from a FMLA leave.

Motorola and the individual defendants moved for summary judgment, and the district court granted the motion. The court found that James could not show that he was reassigned because he had taken leave, the other plaintiffs had not suffered any adverse actions, and the plaintiffs' IIED claims were preempted by the FMLA. We reverse the grant of summary judgment on James's FMLA claims because he has offered evidence to show that the position he held before taking leave was eliminated only because he had taken leave and that he was demoted upon returning from leave. We also reverse the grant of summary judgment on Lineweaver's FMLA claims because an issue of material fact exists as to whether she was denied a tuition reimbursement because of her use of FMLA leave. We affirm with respect to the other plaintiffs' FMLA claims because they failed to show that they were subjected to adverse actions or that actions were taken on account of their exercise of FMLA rights. The grant of summary judgment on all the plaintiffs' IIED claims was also proper because the plaintiffs were not subjected to extreme and outrageous conduct.

## I. BACKGROUND

In this section, we recount the facts pertaining to James Breneisen in the light most favorable to him. We detail the remaining facts in the relevant sections of the analysis.

James was employed at various Motorola facilities between 1994 and 2003. In 1999, he began working in Motorola's Factory Express Program (FEP) at the Rockford facility, where he received merchandise for the program. That November, he was given the additional responsibility of tracking down items lost upon delivery to Motorola. As the program grew, he was also asked to track down outgoing packages, file claims for UPS and Federal Express, devise shipping solutions, develop packaging materials, and formulate process improvements for the assembly lines. By February 2000, James had received the title of Process Analyst to match his new responsibilities.

Beginning in June 2000, James began to report to June Johnson, the new manager of FEP. That month, James says Bobbi Cooper, the Director of Human Resources, told him that she felt he was performing the responsibilities of a salaried employee and that she would explore whether he might receive a salaried position. Before anyone determined whether James would become a salaried employee, he left for FMLA leave on January 15, 2001, to receive treatment for gastro-esophageal reflux. He had previously taken leave at least a dozen times without incident. But, this time, when he returned from leave in April 2001, he was told to work on the keypad line. This was a production line position and it required James to lift heavy boxes and manually press buttons on phone keypads to ensure the phones properly functioned. Motorola claims James was given this job because his prior position was eliminated and his tasks distributed to other employees. Amber White, an administrative assistant, testified that she thought the position had not been eliminated and that she had taken on most of James's functions. James worked in the keypad position for eight days before taking leave for esophageal surgery.

When James returned to work on September 4, 2001, he met with Johnson and Alan Shaw, the plant's Senior Operations Manager. By now, James had exhausted his annual entitlement to FMLA leave. During this meeting, James was informed that his former Process Analyst position had been phased out because of business needs, the responsibilities of that position distributed to others, and that he would have to work in the keypad position because there were no other available positions. James received the title of Technician Assistant, but his pay and benefits were not affected. Nonetheless, James complained that he thought the move was a demotion. White later testified that she viewed the move, although lateral, as a demotion, and it may have looked like a demotion to the rest of the department.

Later that month, James applied for and accepted a Contract Coordinator position in the Contracts Department, where he reported to Darlene Patterson, the department manager. James was satisfied with the work he received in the Contracts Department but says Patterson made work unpleasant by calling him into thirty to forty-five minute meetings multiple times per week to accuse him of creating a hostile work environment and violating company policy. This treatment caused James to suffer from severe stress, high blood pressure, and stomach reflux. James worked in the Contract Coordinator position until February 5, 2002, when he began another medical leave to undergo a total esophagectomy. Motorola terminated James's employment on June 27, 2003.

In March 2002, the plaintiffs brought this suit in Illinois state court against Motorola, June Johnson, Darlene Patterson, Alan Smith, and several individual defendants who have since been dismissed from the case. The complaint alleged that the defendants violated the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., by discriminating and retaliating against the plaintiffs for

taking FMLA leave. The plaintiffs also claimed intentional infliction of emotional distress, and James alleged that he was denied his FMLA right to reinstatement upon return from medical leave. The defendants removed the case to federal court and moved for summary judgment. The district court granted summary judgment in favor of the defendants, finding that James failed to show that he would have been reinstated to his former position if he had not taken leave, none of the plaintiffs had viable discrimination claims because they did not suffer any adverse employment actions, and the plaintiffs' state law IIED claims were preempted by the FMLA.

The district court did not address the plaintiffs' retaliation claims or the authenticity of five purported emails at the heart of the plaintiffs' claims. Those messages, if authentic, would show that the defendants tried to pressure employees who took FMLA leave to resign, that James was demoted because he exercised his FMLA rights, and that the defendants wanted to use James as an example to other employees. However, because the district court found that none of the plaintiffs suffered adverse employment actions, it granted the defendants' summary judgment motion without ruling on the authenticity of the emails. The plaintiffs now appeal.

## II. ANALYSIS

We review a district court's grant of summary judgment de novo, drawing all inferences in favor of the nonmoving parties. *Perez v. Illinois*, 488 F.3d 773, 776 (7th Cir. 2007). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Krieg v. Seybold*, 481 F.3d 512, 516 (7th Cir. 2007).

### A. Summary Judgment Was Not Proper on James's Failure to Reinstate Claim

The FMLA not only entitles an eligible employee to twelve workweeks of leave per year, *see* 29 U.S.C. § 2612(a)(1), but also requires that an employee be reinstated to his former position or an equivalent one upon returning from leave, *see id.* § 2614(a)(1). The Act makes it unlawful for an employer to interfere with these entitlements. *Id.* § 2615(a)(1). James contends that the defendants violated his rights under the FMLA by failing to reinstate him to the position of Process Analyst or its equivalent in April 2001. The defendants admit that James was not restored to the Process Analyst position, but contend the keypad position he received was equivalent. We do not agree.

The test for equivalence is strict. Jobs are only "equivalent" within the meaning of the FMLA if they entail "equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(B). For instance, the jobs "must involve the same or substantially similar duties and responsibilities," 29 C.F.R. § 825.215(a), and James's positions did not. Even though James received the same pay and benefits in both positions, they differed in many respects. While the Process Analyst job involved the administrative functions of tracking shipments, filing claims, and developing shipping solutions, the keypad position involved manual tasks, such as lifting boxes and pressing keys on telephone keypads. Both Johnson and Shaw acknowledged that the jobs involved different responsibilities, and Shaw admitted that the new position had less prestige and visibility. James believed his new position to be a demotion, and Amber White, a colleague, shared his view.

The defendants respond that James was not entitled to be reinstated to the Process Analyst position or any

other because his former position was eliminated.[2] The FMLA certainly does not give employees an unconditional right to reinstatement. "Nothing in [29 U.S.C. § 2614] shall be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B). This means that if an employee's position is eliminated while he is on FMLA leave for reasons unrelated to the taking of leave, he has no right to reinstatement. *See* 29 C.F.R. § 825.216(a); *see also Crouch v. Whirlpool Corp.*, 447 F.3d 984, 986 (7th Cir. 2006); *Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 804-05 (7th Cir. 2001). When an employer claims that the employee's position would have been eliminated even if the employee had not taken leave and provides some evidence to that effect, the employee must convince the trier of fact that his position would not have been eliminated had he not taken leave. *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1018 (7th Cir. 2000). James has provided sufficient evidence that his position would not have been eliminated (or, more accurately, his duties would not have been distributed to others) if he had not taken leave.

Before taking leave in January 2001, James was given increased responsibilities and was told he was being

---

[2] The defendants contend that James conceded that the Process Analyst position was eliminated by not properly contesting a statement made in the defendants' Local Rule 56.1 Statement of Material Facts. *See* N.D. Ill. L.R. 56.1. The record suggests otherwise. In a statement of facts in response to the defendants' motion for summary judgment, *see* Doc. No. 121, James cited to the place in Amber White's deposition where she expressed her belief that the Process Analyst position had not been eliminated, but that she had filled it.

considered for a salaried position. All indications were that he was performing vital, not dispensable, functions. The defendants concede that during James's absence, many of his functions were distributed to other employees; Amber White believes that she was given the bulk of his responsibilities. The only question, then, is whether these changes occurred because of, or in spite of, James's leave. Both Johnson and Shaw give us reason to believe these changes (i.e., the alleged elimination of the Process Analyst position) were precipitated by James's use of FMLA leave. Specifically, when Johnson was asked whether James's job had been eliminated or was no longer in existence, Johnson said: "It was dissolved. It was something that had been broken up into many different people which is a practice of Motorola to absorb responsibilities from when a person leaves." Shaw concurred that James was probably not returned to the Process Analyst position, because "most likely that . . . job either didn't exist anymore or we split the duties up amongst other people. I mean, in our service business it's hard to hold positions open when we've got to take care of customers every day. So we found a way of working through it." These explanations strongly suggest that Motorola had no business justification for eliminating James's position apart from a need to "work[ ] through" the fact that James had taken leave. Motorola appears to have simply replaced James or restructured his position to accommodate his absence. If that was the case, James would have been entitled to reinstatement. *See* 29 C.F.R. § 825.214(a) ("An employee is entitled to . . . reinstatement even if the employee has been replaced or his or her position has been restructured to accommodate the employee's absence."). James offered sufficient evidence to survive summary judgment on his denial of reinstatement claim.

**B. Summary Judgment Was Proper on All But James's and Lineweaver's FMLA Discrimination and Retaliation Claims**

In addition to granting employees particular substantive rights, the FMLA protects employees from being discriminated or retaliated against for exercising their FMLA rights. *See* 29 U.S.C. §§ 2615(a)(2), 2615(b); 29 C.F.R. § 825.220(c); *see also Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005). For instance, if an employee takes FMLA leave, an employer cannot use it as a negative factor in hiring, promotions, or disciplinary actions. 29 C.F.R. § 825.220(c). The plaintiffs seek to prove that Motorola engaged in a campaign of discrimination and retaliation because they used FMLA leave. In doing so, they proceed under the direct method of proof. To show discrimination using this method, the plaintiffs must put forth evidence that the defendants subjected them to adverse employment actions because they exercised their rights under the FMLA. *See Burks v. Wis. DOT*, 464 F.3d 744, 751 n.3 (7th Cir. 2006) (setting forth direct method of proof for a Title VII racial discrimination claim).[3] By contrast, the plaintiffs can make out their charge of retaliation by offering evidence their employers took materially adverse actions against them because they used FMLA leave. *Burnett v. LFW Inc.*, 472 F.3d 471, 481 (7th Cir. 2006). Materially adverse actions are not limited to employment-related activities but include any actions that would dissuade a reasonable employee from exercising his rights under the FMLA. *See Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405, 2409 (2006).

---

[3] Although *Burks* involved a claim of discrimination under Title VII of the Civil Rights Act, we approach discrimination claims under Title VII and the FMLA in the same manner. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 n.3 (7th Cir. 2004).

The plaintiffs offered as evidence of the defendants' discriminatory and retaliatory motive the declarations of twenty-three persons once employed at the Rockford facility, who believed that Motorola discriminated and retaliated against persons who used FMLA leave. Additionally, the plaintiffs referenced an email sent by the Director of Human Resources in September 2000, in which she said she had heard that employees thought they were being downgraded on performance reviews for taking FMLA leave. The plaintiffs also presented several pages alleged to be email correspondence between June Johnson, Al Shaw, and Darlene Patterson, which outlined a scheme to retaliate against those who used FMLA leave and named the plaintiffs as scheme targets. The authenticity of these documents was heavily disputed, but the district court did not rule on that question because it found that none of the plaintiffs had suffered an adverse employment action. The district court did not consider whether any of the plaintiffs had been subjected to a materially adverse action as required for retaliation claims. Even so, we find that only James and Lineweaver have potentially viable discrimination or retaliation claims.

### 1. James's Discrimination and Retaliation Claims

James claims the defendants transferred him to the keypad position to penalize him for taking FMLA leave. Although he received the same pay and benefits in his new position, a dispute exists as to whether the transfer amounted to a demotion or reduced James's opportunities for promotion. If the transfer was a demotion or resulted in fewer promotional opportunities, it would qualify as an adverse employment action and a materially adverse action. *See Goodwin v. Bd. of Trs. of the Univ. of Ill.*, 442 F.3d 611, 619 (7th Cir. 2006); *Herrnreiter v. Chi.*

*Housing Authority*, 315 F.3d 742, 744 (7th Cir. 2002). Further, the purported emails, if authentic, would be evidence of the defendants' discriminatory and retaliatory animus. James offered sufficient evidence to survive summary judgment on his discrimination and retaliation claims. On remand, the district court should determine whether the alleged emails are authentic. *See* Fed. R. Evid. 901; *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997).

### 2. Anna Lineweaver's Discrimination and Retaliation Claims

Lineweaver was a Motorola employee from February 2000 until her resignation in December 2001. While at Motorola, she performed data entry and worked as a customer service assistant. On several occasions, Lineweaver took FMLA leave because of depression. She says that June Johnson told her that her request for a tuition reimbursement was denied because she had taken FMLA leave. Believing what Johnson told her, Lineweaver did not submit a tuition reimbursement request. Although Johnson says she had no role in granting or denying tuition reimbursements, she does not deny telling Lineweaver that her request for reimbursement had been denied because of her use of FMLA leave. Even if Johnson actually had no authority over reimbursements, it was not unreasonable for Lineweaver to believe that Johnson had some role in the process or that Johnson was conveying accurate information about the decision. So we do not fault Lineweaver for failing to submit a tuition reimbursement request. She had reason to think that a futile act. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365-66 (1977) ("When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage

in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application."); *Pime v. Loyola Univ. of Chicago*, 803 F.2d 351, 353 n.1 (7th Cir. 1986) ("One does not have to apply for a job when it is obvious that it would be a futile act.").

The only question, then, is whether the denial of a tuition reimbursement constituted an adverse employment action or a materially adverse action. The district court assumed that tuition reimbursements were purely discretionary. *See Tyler v. Ispat Inland Inc.*, 245 F.3d 969, 972 (7th Cir. 2001) ("[T]he denial of a monetary perk, such as a bonus or reimbursement of certain expenses, does not constitute an adverse employment action if it is wholly within the employer's discretion to grant or deny and is not a component of the employee's salary."). But Motorola provided no evidence to that effect, and the minimal evidence on this record suggests that there was no legitimate reason to deny Lineweaver a tuition reimbursement had she requested it. She had been approved to take classes, so, up until Johnson informed her that she could not get a tuition reimbursement because of her FMLA leave, she had every reason to expect to be reimbursed. Further, Bobbi Cooper, the Human Resources Director, testified that to receive a tuition reimbursement one had to be on active payroll and could not have a "some improvement needed" rating. Lineweaver appears to have met both of those criteria, and, although Cooper indicated there might be additional requirements, she did not elaborate on those. On this record, we have no reason to think that tuition reimbursement was not an entitlement, and without some information as to the amount of money involved, we cannot conclude that the denial of reimbursement was not an adverse employment action or materially adverse action. *See Torrington Extend-A-Care Employee Ass'n v. NLRB*, 17 F.3d 580, 591 (2d Cir. 1994) (treating

the denial of a tuition reimbursement as an adverse employment action); *cf. Fyfe v. City of Fort Wayne*, 241 F.3d 597, 602 (7th Cir. 2001) (holding that the denial of a reimbursement of $156.89 was not a materially adverse employment action). Lineweaver's allegation that she was denied reimbursement because of her FMLA leave finds additional support in the emails of uncertain authenticity. The district court erred in granting Motorola's request for summary judgment on Lineweaver's discrimination and retaliation claims.

### 3. Barbara's Discrimination and Retaliation Claims

Barbara, James's wife, worked for Motorola during the late 1990's and became a Motorola employee again in April 2001. Shortly after returning to Motorola, Barbara began working the weekend shift in the Rockford facility's Factory Express Program. At that time she reported to Don Smith, who fell under June Johnson's supervision. Between 2001 and 2002, Barbara took FMLA leave on several occasions when she or her husband was ill. On appeal, Barbara says Motorola took several actions against her because of her and her husband's use of FMLA leave. She claims that when she returned from leave, Smith would call her into his office to say that other employees had problems with her. For instance, he would say that employees complained that she was "on edge." But Barbara acknowledged in her deposition that migraine headaches had put her "on edge" and that Smith would tell her that the complaints were no big deal. She testified that Smith would comment that if he had a full staff, he could get some work done, but we do not think such comments are alone sufficient to dissuade a reasonable person from taking FMLA leave. *See White*, 126 S. Ct. at 2409. Finally, Barbara accuses Smith

of marking days taken off for FMLA leave unexcused.[4]
However, in initially marking her absences unexcused
Smith was merely following Motorola's policy. Generally
an employee notifies her supervisor and the nurse upon
taking FMLA leave. It is the nurse's obligation to deter-
mine whether the employee's leave falls under the FMLA.
After making that determination, she notifies the em-
ployee's supervisor that the leave was or was not qualify-
ing. Before receiving this notice, the supervisor is to
record the absence as unexcused. In fact, a supervisor
is only authorized to convert an absence from unexcused
to excused upon receiving the nurse's notification.
Barbara admits that her absences were eventually
marked excused and that she was never disciplined for
having temporary unexcused absences. So Barbara has
failed to offer evidence that Smith marked her absences
unexcused as a penalty for her use of FMLA leave. Sum-
mary judgment was proper on her discrimination and
retaliation claims.

---

[4] Barbara also contends that one of the contested emails re-
veals that Johnson had tried to pressure her to quit. She cites
the declarations of two co-workers who attested that Johnson
had taken a range of actions against various employees, like
Barbara, who took FMLA leave. Most of these actions are best
characterized as "petty slights, minor annoyances, and simple
lack of good manners" that do not rise to the level of materially
adverse actions. *White*, 126 S. Ct. at 2415. The declarations
only accuse Johnson of two significant behaviors—verbally
berating persons who took FMLA leave and routinely finding
fault with their work. Notably, in her deposition, Barbara never
accused Johnson of berating her or criticizing her work. So we
do not consider those actions in evaluating Barbara's claims.

### 4. Laura Jones's Discrimination and Retaliation Claims

Jones became an employee at Motorola's Rockford plant in February 2001. After transferring to the weekend shift, she reported to Don Smith and held a variety of positions. Jones took FMLA leave on several occasions because of her depression. She says that upon returning to work, Smith would call her into his office and ask why she was taking leave, say that she could have probably come to work on days she was absent, tell her that missing work was hurting the team, and state that although he could not downgrade her for taking FMLA leave that it was hard to give her a favorable rating when she was never at work. These "minor annoyances" are not materially adverse actions. *White*, 126 S. Ct. at 2415. Jones also says that Smith gave her an unfavorable "some improvement needed" performance rating in response to her use of FMLA leave. Smith claims the unfavorable evaluation was based on Jones's unexcused absences, and Jones admits that she had four hours of unexcused absence during the interval preceding her review and that she had been warned earlier in the year for several unexcused absences. Jones has failed to show that she deserved a higher rating. *See Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 740 (7th Cir. 2006). Moreover, after Jones complained, her evaluation was changed to "meets expectations," and neither her salary nor benefits were impacted by initial lower rating. Jones also cites the contested emails and co-worker declarations as evidence that Johnson harbored a discriminatory and retaliatory intent and took adverse action against her. But most of the alleged actions are too trivial to be actionable. Although the declarations cited two more egregious acts—i.e., that Johnson would call employees who took FMLA leave into her office for lengthy periods and would routinely find fault with

their work—Jones never accused Johnson (whose work schedule overlapped with Jones's just one day a week) of such conduct. Summary judgment was proper on Jones's FMLA claims.

### 5. Jennifer Horton's Discrimination and Retaliation Claims

Horton was employed at Motorola between January 2000 and March 2002. During that time, Horton took FMLA leave on several occasions. In support of her FMLA claims, Horton says that Johnson and Smith made her feel that her work quality and productivity were not good. She also claims that Johnson told her during a performance review meeting in 2001 that if she could resolve her medical problems and improve her attendance, she would be able to advance and receive better pay. However, Horton indicated on a personal commitment form completed in 2001 that her attendance needed improvement and testified that she had non-FMLA absences that year. The district court did not err in granting summary judgment on her FMLA claims.

### 6. Amy Boonos's Discrimination and Retaliation Claims

Amy Boonos became a Motorola employee in December 1997. Two years later, she transferred to the Rockford facility to work as a parts coordinator. She remained in that capacity until leaving Motorola in March of 2002. Boonos took FMLA leave while at Rockford for a shoulder injury and stress-related illnesses. She claims that her supervisor, Mark Larson, gave her a lower raise on one occasion because she had missed work, but she admits that she had missed work for reasons other than her taking of FMLA leave. Additionally, she acknowledges

that Larson had commented that her performance did not meet his expectations. Boonos cannot show that she deserved a higher raise. *See Sublett*, 463 F.3d at 740. Boonos also says that Larson once introduced her by saying: "This is Amy, you probably haven't met her yet because she is never here." While she may have found the comment offensive, this "petty slight[ ]" does not amount to a materially adverse action. *White*, 126 S. Ct. at 2414. The grant of summary judgment was proper on Boonos's FMLA claims.

### C. Summary Judgment Was Proper on the Plaintiffs' Emotional Distress Claims

The plaintiffs argue at length that their state law intentional infliction of emotional distress claims are not preempted. However, even if we were to agree, their claims would fail for lack of merit.

Under Illinois law, three conditions must exist to state a cause of action for intentional infliction of emotional distress. First, the conduct involved must be extreme and outrageous. Second, the actor must intend that his conduct cause severe emotional distress or be aware of a high probability of causing severe emotional distress. Third, the conduct must actually cause severe emotional distress. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003). "[T]o qualify as outrageous, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Id.* at 83. "[T]he tort does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (quoting Restatement (Second) of Torts § 46, comment d, at 73 (1965)). None of the conduct complained of by the plaintiffs, which includes being demoted, questioned or criti-

cized upon return from FMLA leave, passed over for raises or given reduced raises, denied tuition reimbursements, or given unexcused absences meet this demanding standard. *See Bannon v. Univ. of Chicago*, No. 06-2955, 2007 U.S. App. LEXIS 22986, \*17 (7th Cir. Oct. 1, 2007) (citing *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 867-68 (Ill. App. Ct. 2000)). Summary judgment was proper on the plaintiffs' IIED claims.

### III.  CONCLUSION

For the foregoing reasons, we REVERSE the district court's grant of summary judgment on James's and Lineweaver's FMLA claims. We AFFIRM the grant of summary judgment on the plaintiffs' remaining claims and REMAND for further proceedings consistent with this opinion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*