In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-1754

DYNETTA COLE,

*Plaintiff-Appellant,*

*v.*

STATE OF ILLINOIS, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 06-03089—**Jeanne E. Scott**, *Judge.*

ARGUED DECEMBER 11, 2008—DECIDED APRIL 7, 2009

Before MANION, EVANS, and TINDER, *Circuit Judges.*

MANION, *Circuit Judge.* Dynetta Cole took leave under the Family and Medical Leave Act ("FMLA") in November 2005. A month later, Cole's superiors told her that she would lose her job if she did not submit to an employee improvement plan. When Cole refused to sign the plan, her employment was terminated. Cole sued her employer (the State of Illinois) and her superiors alleging retaliation for taking FMLA leave. The district

court granted summary judgment to the defendants. Cole appeals, and we affirm.

## I.

The State of Illinois hired Dynetta Cole in October 2004 to work as a receptionist in the Governor's Office of Citizen's Assistance ("GOCA"). The GOCA manages constituent correspondence for the Governor of Illinois by responding to letters, telephone calls, faxes, and emails. Cole's duties encompassed responding to letters and copying and filing mail, as well as managing correspondence regarding child support. Her initial supervisor was Deputy Director of Correspondence Emily Montgomery. In July 2005, Montgomery was replaced by the new Deputy Director, Jay Brown. Brown reported to Director of Correspondence Cory Verblen, who had taken office in January 2005. Cole and Brown worked in Springfield; Verblen worked in Chicago.

According to Brown and Verblen, they received numerous complaints about Cole's performance. Cole's coworkers allegedly complained about her frequent absences and personality conflicts. Email exchanges in September and October 2005 reveal that Cole clashed with Verblen and Brown over her doctor appointments and her schedule for picking up her children from school. Cole downplays the significance of these interactions, arguing that they were misunderstandings that were resolved.

On November 10, 2005, Cole was injured in a car accident while on her lunch break. On November 18, she was

officially granted medical leave under the FMLA. According to the form, the leave was to end "on or about 12/2005." Prior to her return, Verblen called Cole and told her that her work was "piling up" and that she needed to return. Cole obtained permission from her doctor to return to work on December 5 on a part-time basis, and she did, although the transition was less than smooth. On December 14, Brown sent Cole an email at 9:40 a.m., trying to ascertain where she was, and stating, "I understand that you're going through a lot right now but this can't keep happening." On December 16, Cole arrived at work at 12:30 p.m.; Verblen had already sent her an email requesting her to call him when she arrived. Over the telephone, Cole told Verblen that Brown had given her permission to arrive late due to a doctor appointment. After speaking with Cole, Verblen and Brown conferred by telephone. Brown urged Verblen to take disciplinary action. Verblen, with help from Brown, subsequently created an "employee improvement plan" for Cole.

At a meeting between Cole, Verblen, and Brown on December 22, Verblen presented the improvement plan. The plan stated that it would extend from December 22 to January 13 of the next year. Cole would meet with Verblen and Brown at the end of the period to discuss her compliance with the plan. The plan identified three areas for improvement: attendance, attitude, and job performance. Under attendance, the plan stated that Cole "needs to more effectively communicate to her superiors the exact days and times she will be out of the office." To this end, the plan offered these "suggested

solutions": Cole should write out her schedule "on a daily and weekly basis" and give copies to Verblen and Brown, and "[a]ny deviation from that ongoing schedule" should be brought to the attention of Verblen and Brown. Under attitude, the plan stated that the GOCA had received "multiple complaints from constituents" and staff members that Cole had been "rude and unhelpful." These "suggested solutions" were offered: Cole should "become more aware of her tone" and should "work[ ] on becoming a better listener." Under job performance, the plan stated that Cole generally "completes the duties she is assigned in a satisfactory manner." However, given her part-time status due to the car accident, "it is especially important that she keep up on her filing duties" in order to "alleviate the strain on her fellow employees." Accordingly, the plan suggested that Cole "plan[ ] out her day better and becom[e] more organized with her work." Cole was told that she would be fired if she did not sign the plan.

Cole declined to sign the improvement plan at the December 22 meeting. Instead, Cole responded by letter to Verblen and Brown on December 28. Cole's letter indicated that she believed that she had performed her job satisfactorily, noting that she had scored well on her most recent job evaluation. Cole blamed any difficulties on a "cultural difference" and suggested that the GOCA offer seminars in "multicultural training," "conflict resolution," "sensitivity training," "stress management," and "effective communication." Cole, Verblen, and Brown conferred by telephone. Verblen told Cole that, although he appreciated her suggestions, she would be fired if

she did not sign the improvement plan. Cole again refused to sign and was fired.

Cole then brought this suit against the State of Illinois, Montgomery, Verblen, and Brown. The complaint claimed that the defendants retaliated against Cole for exercising her FMLA rights, violated her First Amendment rights, and violated Illinois laws protecting whistleblowers. The defendants moved for summary judgment, arguing that Cole could present no evidence of retaliation for the exercise of her FMLA rights. The defendants also argued that Cole had abandoned the First Amendment claim and the Illinois state claim.[1] The district court concluded that Cole had failed to present a "convincing mosaic" of circumstantial evidence to prove that the defendants had "acted with discriminatory intent." After examining the evidence, the district court held that "[t]here is nothing Cole can point to that reasonably suggests that her termination was motivated by anything other than her refusal to accept the improvement plan." Accordingly, the district court granted summary judgment for the defendants. Cole appeals.

---

[1] The First Amendment claim and the whistleblower claim were based on allegations that Cole had threatened to report improprieties that occurred at the GOCA prior to her car accident. Because Cole abandoned these claims, it is unnecessary to discuss them further.

II.

On appeal, Cole argues that the district court erred in granting the defendants summary judgment on her FMLA claim. That law makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Cole seeks to prove her claim under the direct method. Under this method, she must "present evidence that her employer took a materially adverse action against her on account of her protected activity." *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 771 (7th Cir. 2008). Cole may prevail under the direct method either by "showing an admission of discrimination" or by "constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker."[2] *Id*. If the defendants contradict Cole's

---

[2] Cole contends that the district court "erroneously applied a much more strenuous standard" than the FMLA requires by stating that Cole had to show a "convincing mosaic" of circumstantial evidence. The phrase "convincing mosaic" was first mentioned in *Troupe v. May Department Stores*, 20 F.3d 734, 736 (7th Cir. 1994). We later clarified the meaning of this phrase, stating that:

> A mosaic is a work of visual art composed of a large number of tiny tiles that fit smoothly with each other, a little like a crossword puzzle. A case of discrimination can likewise be made by assembling a number of pieces of evidence none meaningful in itself, consistent with the

(continued...)

case, "the case must be tried unless [they] present[ ] unrebutted evidence" that an adverse action would have occurred "even if [they] had had no retaliatory motive." *Id*.

The initial question is whether Cole was terminated "on account of" the exercise of her right to FMLA leave. The district court concluded that "[t]here is nothing Cole can point to that reasonably suggests that her termination was motivated by anything other than her refusal to accept the improvement plan." We agree. Brown testified in his deposition that Cole was fired for not

---

[2] (...continued)

    proposition of statistical theory that a number of observations each of which supports a proposition only weakly can, when taken as a whole, provide strong support if all point in the same direction: a number of weak proofs can add up to a strong proof.

*Sylvester v. SOS Children's Vills. Ill.*, 453 F.3d 900, 903 (7th Cir. 2006). We explained that *Troupe* did not necessarily require that "circumstantial evidence in a discrimination or retaliation case must . . . have a mosaic-like character." *Id*. at 904. In *Sylvester*, we held that summary judgment for the defendant was not warranted even though there was "no rich mosaic of circumstantial evidence of retaliation." *Id*.

Despite Cole's contention that the district court's statement of law was "erroneous," we do not believe that she has illuminated a point of any consequence. The "convincing mosaic" standard is simply shorthand for the requirement that Cole must present circumstantial evidence that, when considered together, would permit a jury to believe that the defendants retaliated against her for exercising her FMLA rights.

agreeing to the improvement plan. Prior to the termination, Verblen told Cole twice that she would be fired if she did not sign the plan. Despite these warnings, Cole refused to sign. Although Cole was fired within two months of taking FMLA leave, we have held that "[s]uspicious timing alone rarely is sufficient to create a triable issue" and on a motion for summary judgment "mere temporal proximity is not enough to establish a genuine issue of material fact." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008). Cole has not introduced any evidence to suggest that her termination stemmed from any cause other than her refusal to sign the plan. Accordingly, insofar as Cole claims wrongful retaliation based on her termination, the district court properly granted summary judgment to the defendants.

Cole also argues that the improvement plan itself constituted an adverse action. Thus, Cole claims that the presentation of the plan gave rise to a cause of action for retaliation. Moreover, she argues that the defendants' action need not be "materially adverse," citing a Department of Labor regulation that states that an employer may not "use the taking of FMLA leave as a negative factor in employment actions, such as . . . disciplinary actions." 29 C.F.R. § 825.220(c). According to Cole, *any* disciplinary action that an employer takes on account of FMLA leave gives rise to a viable retaliation claim. Hence, under Cole's view, because the improvement plan was disciplinary, its imposition constituted an adverse action.

Contrary to Cole's position, we have consistently required that the adverse action giving rise to an FMLA

retaliation claim be "materially adverse." *See, e.g.*, *Ridings*, 537 F.3d at 771; *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 979 (7th Cir. 2008); *Burnett v. LFW, Inc.*, 472 F.3d 471, 481 (7th Cir. 2006). "Materially adverse actions are not limited to employment-related activities but include any actions that would dissuade a reasonable employee from exercising his rights under the FMLA." *Breneisen*, 512 F.3d at 979 (citing *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006)). The Supreme Court has noted in the similar context of Title VII claims that "it is important to separate significant from trivial harms." *Burlington*, 548 U.S. at 68. The decision to take FMLA leave "cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*

Here, the adoption of the improvement plan did not constitute an adverse action that would cause a reasonable employee to forego exercising her rights under the FMLA. The most onerous aspect of the improvement plan was the requirement that Cole submit daily and weekly schedules to Verblen and Brown. Although the task of preparing daily plans would necessitate some extra work, this requirement is not so oppressive that a reasonable employee would be discouraged from taking FMLA leave. Presumably, a reasonable employee plans her day. The mere act of submitting a daily plan to one's superiors is not an additional burden of great concern. Rather, it can be seen as a constructive assignment that, when executed, could improve an employee's work habits and productivity.

In addition to the planning requirements, the plan also obligated Cole to "become more aware of her tone" and to "work[ ] on becoming a better listener." Such minor conditions would not dissuade a reasonable person from exercising her rights. Cole was not deprived of responsibility, hours, pay, or any other relevant accoutrement of her position. Indeed, "not everything that makes an employee unhappy is an actionable adverse action." *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001). Accordingly, the improvement plan was not a materially adverse action. *Cf. Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1224 (10th Cir. 2006) (concluding that an improvement plan, "standing alone, is not an adverse employment action"); *Givens v. Cingular Wireless*, 396 F.3d 998, 998 (8th Cir. 2005) (holding that placement "on a 'performance improvement plan,' without more, did not constitute an adverse employment action"); *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (concluding that placement on an improvement plan that did not affect pay grade or salary was not an adverse action); *Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002) (stating that "institution of performance improvement plans, alone, do[es] not constitute objectively intolerable conditions").

Our prior decisions further support this conclusion. In *Oest*, we concluded that negative performance evaluations did not constitute materially adverse actions. We stated that although negative evaluations may have ultimately led to the termination, "[s]uch a course was not an inevitable consequence of every reprimand." *Oest*, 240 F.3d at 613. Instead, "job-related criticism can

prompt an employee to improve her performance and thus lead to a new and more constructive employment relationship." *Id*. We further noted that the plaintiff in *Oest* had not shown "any immediate consequence of the reprimands, such as ineligibility for job benefits like promotion, transfer to a favorable location, or an advantageous increase in responsibilities." *Id*. In this case, had Cole signed the employee improvement plan, it is possible that she may have satisfied Verblen and Brown and improved her relationship with her superiors. Moreover, as in *Oest*, Cole was not made ineligible for job benefits by the improvement plan; rather, the context for the plan was an attempt to secure Cole's FMLA benefits while ensuring that she made an adequate contribution to the office. Accordingly, we conclude that Verblen's act of requiring Cole to sign the improvement plan was not a materially adverse action.

Cole relies on *Lewis v. School District #70*, 523 F.3d 730 (7th Cir. 2008), in which we held that an employee had presented sufficient evidence of retaliatory intent to survive a summary judgment motion. In *Lewis*, a book-keeper at the defendant school district had taken FMLA leave after exhausting her vacation time and sick leave. *Id*. at 736. During her leave, she continued to perform her duties from home. *Id*. "She never was credited for her time spent working at home . . . and she was not paid for the days on which she took FMLA leave." *Id.* Nevertheless, the school board wanted to terminate her and expressed frustration with the possibility that she might be protected under FMLA; board members called the situation a "fiasco" and decried former President

Clinton for signing the law. They also encouraged the superintendent to build a case for firing the bookkeeper in order to skirt the FMLA's protections. *Id*. Ultimately, the school board voted to replace the bookkeeper and gave her the option of either resigning or accepting a lower-paid position as a teacher's assistant. *Id*. at 737. The bookkeeper sued the school board members, the superintendent, and the school district. After the district court granted summary judgment for the defendants, we reversed. *Id*. at 742. We held that the plaintiff had presented sufficient evidence of retaliation. First, the letter informing the plaintiff of the school board's decision to terminate her stated that "you miss too much work to meet the essential functions of your present assignment." *Id*. Second, the comments of the school board suggested an impermissible motive. *Id*. at 742-43. We noted that the school board could have taken other actions, such as hiring part-time help, if the bookkeeper's inability to perform her functions was its true motivation. *Id*. at 743.

This case is distinguishable from *Lewis*. Unlike the plaintiff in that case, Cole was not fired or constructively discharged. Instead, the improvement plan offered her the opportunity to improve her performance and retain her job by increasing her communication with her superiors regarding her schedule. Unlike *Lewis*, Cole could have signed the plan and presumably avoided termination. Moreover, the plaintiff in *Lewis* faced an employment action that was actually materially adverse: she could either resign or take a significantly lower-paying job. In contrast, Cole faced the less-than-intimidating prospect of planning her days and minding her tone.

Accordingly, *Lewis* does not require that we reverse the district court.

### III.

The district court properly granted summary judgment for the defendants on Cole's FMLA retaliation claim. Cole has not produced any evidence that the defendants acted with retaliatory intent in terminating her employment. The evidence demonstrates that the sole reason for her termination was her failure to agree to the performance improvement plan. Moreover, the performance improvement plan was not a materially adverse action because Cole suffered no reduction in responsibility, pay, hours, or any other benefit, and it did not impose a material change in her employment duties. In short, the improvement plan would not have dissuaded a reasonable employee from exercising her rights under the FMLA. Accordingly, the district court properly granted summary judgment for the defendants. We AFFIRM.