**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2015 MSPB 51**

Docket Nos. AT-0752-11-0634-I-2
AT-1221-12-0591-W-1

**Tommie G. Savage,**

**Appellant,**

**v.**

**Department of the Army,**

**Agency.**

September 3, 2015

Felipe Bohnet-Gomez and Michael D. Kohn, Esquire, Washington, D.C.,
for the appellant.

Nancy Washington Vaughn and Ryan Andrew Black, Huntsville, Alabama,
for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1      The appellant has petitioned for review of the February 7, 2014 initial decision that affirmed her removal and the February 6, 2014 initial decision that granted in part her request for corrective action under the Whistleblower Protection Act (WPA). For the reasons discussed below, we JOIN the two appeals[1] and REMAND the joined appeal for further adjudication.

---

[1] Joinder of two or more appeals filed by the same appellant is appropriate where doing so would expedite case processing and will not adversely affect the parties' interests.

BACKGROUND

¶2        The appellant formerly was employed as a Contract Specialist with the U.S. Army Engineer and Support Center in Huntsville, Alabama. From 1993, when she began full-time employment, through 2006, she received excellent performance ratings and was promoted regularly. *Savage v. Department of the Army*, MSPB Docket No. AT-0752-11-0634-I-2, Refiled Appeal File (RAF), Tab 64, Exhibits (Exs.) A-P, AD. In 2006, she was designated as the contracting officer for the "Ranges Program," which generally concerns the design and implementation of agency training facilities. *See* RAF, Tab 13 at 4.

¶3        Beginning in late 2006, and continuing into 2007, the appellant reported what she claimed were illegal and improper contracting activities in the Ranges Program. RAF, Tab 64, Exs. AE, AG. These disclosures mainly involved allegations that a contractor employee (F.H.) was making key contracting decisions that should have been made by government officials, particularly program manager M.F. Essentially, the appellant claimed that a close personal relationship between F.H. and M.F. constituted a conflict of interest that explained and accounted for the liberties that F.H. was permitted within the Ranges Program. *See id.* The appellant's disclosures were a factor in the initiation of several command-directed inquiries into the Ranges Program, including an internal audit that resulted in a May 24, 2007 draft report, which essentially validated the appellant's legal concerns, as well as an Army Regulation (AR) 15-6 investigation that resulted in a written report dated August 9, 2007. *Id.*, Exs. AK, EQ. The latter report identified the appellant by name as a source of the allegations of wrongdoing. *Id.*, Ex. EQ at 14.

¶4        Meanwhile, in June 2007, the appellant filed a formal equal employment opportunity (EEO) complaint, in which she alleged, inter alia, that she had been

---

*Davis v. U.S. Postal Service*, 119 M.S.P.R. 22, ¶ 1 n.1 (2012); 5 C.F.R. § 1201.36(a), (b). We find that these criteria are satisfied here.

subjected to harassment and a hostile work environment because of her race and sex. *See* RAF, Tab 64, Ex. BE. On October 17, 2007, the appellant and the agency entered into a negotiated settlement agreement that resolved the EEO complaint and provided, inter alia, that the appellant would be reassigned "to a position comparable with her current grade and salary" with the agency's Small Business Office in Huntsville. *Id.* Effective November 11, 2007, the appellant was reassigned, with no reduction in pay, from her YC-1102-02 Supervisory Contract Specialist position to a nonsupervisory YA-1102-02 Contract Specialist position with the Small Business Office. *Id.*, Exs. BE, BG. Subsequently, in December 2007, the appellant received a performance appraisal with an overall rating of 3 out of 5, far less favorable than her previous appraisals. RAF, Tab 52, Ex. EC; *see* RAF, Tab 64, Exs. A-H, K-P, AD.

¶5        Beginning in June 2008, the appellant made additional disclosures concerning what she believed to be a violation of Federal acquisition regulations in the office's failure to utilize DD Form 2579, Small Business Coordination Record. On August 17, 2008, the appellant and her new first-level supervisor, Deputy Commander D.B., had a heated discussion concerning the DD Form 2579 issue. The following day, August 18, 2008, the appellant visited a psychologist, Dr. B.M., who recommended an 8-week leave of absence due to "intensifying depression, anxiety and work[] caused stress." RAF, Tab 8, Subtab 4hh. D.B. granted the appellant's request for leave through October 20, 2008. *Id.*, Subtabs 4ff-4gg.

¶6        On October 18, 2008, Dr. B.M. recommended that the appellant's leave of absence be extended until December 22, 2008. *Id.*, Subtab 4ee. D.B. initially denied the appellant's additional leave request, but after requesting and receiving additional documentation from Dr. B.M., he granted the request for sick leave until December 5, 2008. *Id.*, Subtabs 4z-4cc. The appellant then submitted a leave request under the Family and Medical Leave Act (FMLA), with a certification from Dr. B.M. *Id.*, Subtab 4x. D.B. granted the appellant's request

for FMLA leave from December 8, 2008, through March 5, 2009. *Id*., Subtab 4w. Meanwhile, in December 2008, D.B. issued the appellant a performance appraisal, with an overall rating of 3 out of 5. RAF, Tab 52, Ex. EB.

¶7         By letter dated March 4, 2009, Dr. B.M. recommended that the appellant's return-to-work date tentatively be changed from March 5, 2009, to May 4, 2009, and the appellant requested an additional leave of absence in accordance with those instructions. RAF, Tab 8, Subtabs 4u-4v. By letter dated March 5, 2009, D.B. denied the request in large part, but approved the appellant's use of accrued sick leave through noon on March 12, 2009. *Id*., Subtab 4t. On March 11, 2009, the appellant requested advanced sick leave through May 4, 2009. *Id*., Subtab 4s. That same day, D.B. denied the request, citing the appellant's "previous inability to return to work according to [her] psychologist's estimates." *Id*., Subtab 4r. However, D.B. noted that he had miscalculated the appellant's annual leave balance and informed her that she was expected to return to work at noon on March 26, 2009, when all of her accrued leave was exhausted. *Id*. The appellant requested reconsideration and submitted a March 13, 2009 letter from Dr. B.M., who again recommended a return date of May 4, 2009. *Id*., Subtabs 4p-4q. D.B. again denied the appellant's request. *Id*., Subtab 4o. The appellant then made a request for leave without pay (LWOP), which D.B. also denied, again noting that Dr. B.M. had already provided multiple return dates and that the appellant had not been able to return to work on any of those dates. *Id*., Subtabs 4n-4o. On April 3, 2009, D.B. informed the appellant that her leave was exhausted and that she therefore would be placed in an absence without leave (AWOL) status effective March 27, 2009. *Id*., Subtab 4*l*. The effective date of her AWOL status was later changed to April 2, 2009, to reflect the final sick and annual leave hours she had accrued. *Id*., Subtab 4d.[2]

---

[2] On April 22, 2009, the appellant filed an appeal with the Board's regional office contesting the agency's decision to place her on AWOL status. That appeal was

¶8    On April 3, 2009, the appellant filed another formal EEO complaint, in which she alleged that she had been subjected to a hostile work environment, based on reprisal for the settled 2007 EEO complaint, as well as another EEO complaint she had filed in 2008. *See Savage v. Department of the Army*, MSPB Docket No. AT-0752-11-0634-I-1, Initial Appeal File (I-1 IAF), Tab 4. She named D.B. as the discriminating official and cited his denial of her request for LWOP, among other alleged retaliatory actions. *Id.* The agency ultimately issued a final agency decision (FAD) finding no discrimination as to the allegations in her April 3, 2009 complaint. *Id.*

¶9    In a May 6, 2009 letter, Dr. B.M. related that the appellant briefly reported to work on May 4, 2009, but became physically ill and left after approximately an hour. RAF, Tab 8, Subtab 4k. Based on that incident, Dr. B.M. recommended September 1, 2009, as a new tentative return-to-work date. *Id.* In an email dated May 11, 2009, the appellant submitted a copy of the May 4 letter from Dr. B.M. and requested that her AWOL status be converted to LWOP or advanced sick leave. *Id.*, Subtab 4j. In response to that request, D.B. asked for additional information from Dr. B.M. and also scheduled the appellant for an appointment with a second psychologist, Dr. J.H. *Id.*, Subtabs 4h-4i. Dr. B.M. did not respond to D.B.'s request. The appellant met with Dr. J.H. on July 8, 2009, and in a memorandum dated July 19, 2009, Dr. J.H. opined that it was unlikely that the appellant would be able to return to her job in the next 6 to 12 months. *Id.*, Subtab 4g. He further stated, "There is considerable doubt in the mind of the undersigned that she will ever return to the currently assigned workplace, but continued treatment might be helpful in bringing that about or assisting [the appellant] to the point that she could work for the Corps in some other capacity." *Id.*

---

dismissed for lack of jurisdiction. *Savage v. Department of the Army*, MSPB Docket No. AT-3443-09-0577-I-1, Initial Decision (Aug. 12, 2009).

¶10      By notice dated September 14, 2009, D.B. proposed to remove the appellant based on three charges: (1) AWOL; (2) Excessive Absences; and (3) Unavailability to Report for Duty with No Foreseeable End. RAF, Tab 8, Subtab 4d. The appellant did not respond to the notice. By letter dated November 3, 2009, the deciding official, Colonel N.T., removed the appellant effective November 6, 2009. *Id.*, Subtab 4b. The appellant filed another formal EEO complaint concerning her removal, and on April 8, 2011, the agency issued a FAD finding no discrimination. *Id.*, Subtab 3.

¶11      The appellant filed a timely appeal of her removal on May 6, 2011. I-1 IAF, Tab 1. In her appeal, she contended that her removal was the ultimate result of the agency creating a hostile work environment where she could not perform her duties and responsibilities, which in turn led to her extended absences. *Id.* She further contended that the hostile work environment was created following the settlement of her June 2007 EEO complaint. *Id.* In September 2011, she requested that her appeal be dismissed without prejudice to allow her additional time to file a whistleblowing retaliation complaint with the Office of Special Counsel (OSC). I-1 IAF, Tab 20. The administrative judge granted her request and dismissed the appeal without prejudice to refiling. I-1 IAF, Tab 22, Initial Decision.

¶12      On October 11, 2011, the appellant filed a complaint with OSC. *See* RAF, Tab 1; *Savage v. Department of the Army*, MSPB Docket No. AT-1221-12-0591-W-1, (W-1) File, Tab 1. In her complaint, she alleged that agency officials had taken various personnel actions, including her removal, in retaliation for reporting contract fraud to auditors, investigators, the Federal Bureau of Investigation, and the Criminal Investigation Command, and for participating in the AR 15-6 investigation. *See* W-1 File, Tab 1. By letter dated May 27, 2012, OSC notified the appellant that it had closed its investigation and informed her of her right to file an individual right of action (IRA) appeal with the Board. *Id.*

¶13       Subsequently, the appellant filed a timely IRA appeal and also refiled her removal appeal. *Id.* The administrative judge joined the two appeals for hearing. RAF, Tab 3. In the IRA appeal, the administrative judge determined that the appellant had established jurisdiction concerning the following personnel actions taken against her: (1) the November 2007 reassignment; (2) the December 2007 performance appraisal; (3) the failure to confer a monetary award to her following a Small Business Office conference in 2008; (4) the December 2008 performance appraisal; (5) the refusal to extend her return-to-work date in March 2008; (6) the denial of her advanced sick leave request in March 2008; (7) the denial of her LWOP request in March 2008; and (8) an alleged constructive suspension based on the creation of a hostile work environment that compelled her to be absent from work from mid-August 2008, until her removal in November 2009. RAF, Tab 55. In the removal appeal, the appellant raised affirmative defenses of retaliation for protected whistleblowing activity, retaliation for protected EEO activity, and discrimination based on race (African-American), sex (female), and disability. *Id.*

¶14       Following a hearing on December 10 and 11, 2012, the administrative judge issued separate initial decisions in the IRA and removal appeals. In the IRA appeal, the administrative judge determined that the appellant had made protected disclosures concerning the Ranges Program, and also had shown that they were a contributing factor in all personnel actions at issue, except for the alleged constructive suspension. W-1 File, Tab 6, Initial Decision (W-1 ID) at 6-13. He noted that the appellant also had alleged a protected disclosure concerning the DD Form 2579, but found that she had not exhausted her OSC remedy regarding that disclosure. W-1 ID at 8. The administrative judge then found that the agency had shown by clear and convincing evidence that it would have taken some of the alleged retaliatory actions in the absence of the appellant's whistleblowing activity, but had failed to meet that burden as to the December 2007 and December 2008 performance evaluations, and the failure to

provide a monetary award for the appellant's participation in a Small Business Office conference. W-1 ID at 13-21. Finally, the administrative judge concluded that the appellant had failed to establish that she was constructively suspended. W-1 ID at 21-24.

¶15        In the removal appeal, the administrative judge sustained all three charges and found that the agency had met its burden of proof regarding nexus and penalty. RAF, Tab 71, Initial Decision (RAF ID) at 4-12. He further found that the appellant had failed to establish her affirmative defenses. RAF ID at 12-18. Accordingly, the administrative judge sustained the removal action. RAF ID at 18. The appellant filed timely petitions for review of both initial decisions. *Savage v. Department of the Army*, MSPB Docket No. AT-0752-11-0634-I-2, Petition for Review File, Tab 5; *Savage v. Department of the Army*, MSPB Docket No. AT-1221-12-0591-W-1, Petition for Review (W-1 PFR) File, Tab 5.

## ANALYSIS
### MSPB Docket No. AT-1221-12-0591-W-1
The appellant's constructive suspension claim is remanded for further adjudication as a chapter 75 appeal.

¶16        On petition for review, the appellant contends that the administrative judge erred in requiring her to establish OSC exhaustion concerning her constructive suspension claim. W-1 PFR File, Tab 1 at 20. In support of her argument, she cites *Covarrubias v. Social Security Administration*, 113 M.S.P.R. 583 (2010), *overruled by Colbert v. Department of Veterans Affairs*, 121 M.S.P.R. 677 (2014), in which we held that an IRA appeal is limited to alleged personnel actions that are not otherwise appealable to the Board and that the involuntary retirement claim raised by the appellant in that case therefore was outside the scope of her IRA appeal. *Id*., ¶ 9 n.2. She reasons that, under *Covarrubias*, her constructive suspension claim is subject to chapter 75 jurisdictional standards, rather than the jurisdictional standards for IRA appeals, and that it is unnecessary

to prove OSC exhaustion to establish an affirmative defense of whistleblowing retaliation in an adverse action appeal.

¶17    While the appellant's reasoning was sound when she filed her petition for review, *Covarrubias* has since been overruled. *Colbert*, 121 M.S.P.R. 677, ¶ 12 n.5. The holding of *Covarrubias* was based on our previous decision in *Massimino v. Department of Veterans Affairs*, 58 M.S.P.R. 318 (1993), *abrogated by* 5 U.S.C. § 7121(g), in which we held that when an individual who was affected by an action that is directly appealable to the Board files a whistleblower retaliation complaint with OSC, the jurisdictional basis for a subsequent appeal to the Board is the "true nature" of the agency's action. *Id*. at 322-23. After *Covarrubias* was issued, however, we recognized that *Massimino* had been abrogated by the 1994 amendments to the WPA, in particular, the new section at 5 U.S.C. § 7121(g). *See Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶ 18 (2013). Under 5 U.S.C. § 7121(g), an employee who claims to have suffered whistleblowing reprisal regarding an action may elect no more than one of the following remedies: a direct appeal to the Board; a negotiated grievance procedure pursuant to 5 U.S.C. § 7121; or a request for corrective action under 5 U.S.C. chapter 12, subchapters II and III, i.e., an OSC complaint, potentially to be followed by an IRA appeal. Ordinarily, an individual who first requests corrective action from OSC will be deemed to have made a binding election to proceed in that forum. 5 U.S.C. § 7121(g)(4)(C). In such a case, the jurisdictional requirements for an IRA appeal apply, even if the contested personnel action would have been directly appealable to the Board. *See Agoranos*, 119 M.S.P.R. 498, ¶ 14. This principle applies equally to alleged constructive actions. *See Colbert*, 121 M.S.P.R. 677, ¶ 12 n.5.

¶18    However, we also have held that an election under 5 U.S.C. § 7121(g) is binding only if made knowingly and voluntarily. *Agoranos*, 119 M.S.P.R. 498, ¶ 16. Here, neither the agency, nor the administrative judge, advised the appellant that contesting her alleged constructive suspension in an OSC complaint

would preclude a subsequent chapter 75 appeal before the Board.  *See id.*, ¶ 18.
Moreover, while the express language of 5 U.S.C. § 7121(g) negates *Massimino*
and *Covarrubias*, the Board had not yet recognized this when the OSC complaint
was filed, and the appellant and her attorney could have reasonably relied on
those cases.  *See Agoranos*, 119 M.S.P.R. 498, ¶¶ 17-18.[3]  We therefore find that
the appellant's decision to contest her alleged constructive suspension before
OSC was not a binding election and did not preclude her from filing an adverse
action appeal before the Board.  Because the appellant has expressly indicated
that she wishes for her constructive suspension claim to be adjudicated outside
the scope of her IRA appeal, we will consider her claim as an adverse action
appeal under chapter 75.

¶19        Like involuntary resignations, removals, and reductions in pay or grade,
involuntary leaves of absence may be appealable under chapter 75.  *Bean v. U.S.
Postal Service*, 120 M.S.P.R. 397, ¶ 8 (2013).  The Board has found jurisdiction
over constructive suspensions in a variety of situations.  *See Brown v. U.S. Postal
Service*, 115 M.S.P.R. 88, ¶ 8 (2010).  Although various fact patterns may give
rise to an appealable constructive suspension, all constructive suspension claims
(and indeed all constructive action claims), have two things in common:
(1) the employee lacked a meaningful choice in the matter; and (2) it was the
agency's wrongful actions that deprived the employee of that choice.  *Bean*,
120 M.S.P.R. 397, ¶ 8.  Assuming that the jurisdictional requirements of a

[3] The administrative judge also appears not to have recognized the effect of 5 U.S.C. § 7121(g), as evidenced by his decision to dismiss the removal appeal without prejudice to permit the appellant to file an OSC complaint.  Ordinarily, under 5 U.S.C. § 7121(g), the appellant's removal would not have been properly before OSC, as she had already appealed it to the Board.  To the extent the administrative judge may have erred in granting the appellant's request for dismissal without prejudice, or to the extent OSC may have erred in including the removal in the scope of its investigation, these errors have no effect on the outcome of this appeal.

chapter 75 appeal are otherwise met, as is the case here, proof of these two things is sufficient to establish Board jurisdiction. *Id*.

¶20 Here, the appellant alleges that her absences beginning on August 18, 2008, were the result of psychological damage caused by intolerable working conditions. To establish jurisdiction over a constructive suspension on the basis of intolerable working conditions, an appellant must show that a reasonable person would have felt compelled to absent herself under the conditions and that the agency was culpable for these conditions. *Peoples v. Department of the Navy*, 83 M.S.P.R. 216, ¶ 5 (1999). Because no employee is entitled to leave work and remain absent without explanation, the appellant must inform the agency of the existence of the objectionable conditions and request assistance or remediation from the agency. *Id*., ¶ 8. The agency also must be notified of the specific nature of the conditions and the employee's inability to cope with them before the agency can be expected to investigate, attempt remediation of the conditions if necessary, or to consider finding other duties or positions for the employee pending resolution of the complaint. *Id*., ¶ 9.

¶21 Here, the administrative judge concluded that, because the appellant did not request reassignment as a reasonable accommodation for her medical restrictions, she had a meaningful choice as to her absences, and therefore had not been constructively suspended. W-1 ID at 24. However, a medical absence may be attributable to intolerable working conditions regardless of whether the employee subsequently requests accommodation under the Rehabilitation Act. If the conditions are such that a reasonable person would feel compelled to absent herself, and the agency is culpable for those conditions, to constitute a nonfrivolous allegation of involuntary absence from duty, it is sufficient for the appellant to notify the agency that she is medically incapable of returning to duty in her current work environment. *See Peoples*, 83 M.S.P.R. 216, ¶ 11.

¶22 Accordingly, we remand the appellant's constructive suspension claim for adjudication as a chapter 75 appeal under the standard set forth in *Peoples*. If the

administrative judge finds that the appellant suffered a constructive suspension, he should consider not only whether the appellant received due process concerning that action, but also whether it was taken in retaliation for whistleblowing activity, including the DD Form 2579 disclosure. *See Jenkins v. Environmental Protection Agency*, 118 M.S.P.R. 161, ¶ 13 (2012) (finding that reversal of removal action on due process grounds did not render the appeal moot where the appellant could obtain further relief based on her whistleblowing reprisal claim).

The appellant's claim of a hostile work environment is an alleged personnel action.

¶23    Regardless of whether the appellant establishes that her absences amounted to a constructive suspension, the creation of a hostile work environment is itself a personnel action for purposes of the WPA. The statute defines "personnel action" to include, among other listed actions, "any other significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(xii). The legislative history of the 1994 amendment to the WPA indicates that the term "any other significant change in duties, responsibilities, or working conditions" should be interpreted broadly, to include "any harassment or discrimination that could have a chilling effect on whistleblowing or otherwise undermine the merit system." *Roach v. Department of the Army*, 82 M.S.P.R. 464, ¶ 24 (1999) (quoting 140 Cong. Rec. H11, 421 (daily ed. Oct. 7, 1994) (statement of Rep. McCloskey)). Although the appellant alleged before both OSC and the Board that the agency subjected her to a hostile work environment in retaliation for her protected disclosures concerning the Ranges Program, the administrative judge did not address that alleged personnel action, except to the extent it also was implicated in the appellant's constructive suspension claim. Accordingly, the administrative judge should determine on remand whether the appellant established prohibited whistleblowing retaliation regarding the alleged creation of a hostile work environment.

<u>Further adjudication is needed to determine whether the agency established by clear and convincing evidence that it would have taken the remaining actions in the absence of the appellant's whistleblowing activity.</u>

¶24    The administrative judge found that, while the appellant's protected disclosures were a contributing factor in the remaining personnel actions, the agency established by clear and convincing evidence that it would have taken some, but not all, of those actions in the absence of her whistleblowing activity. Specifically, the administrative judge found that the agency met its burden as to the appellant's November 2007 reassignment,[4] the refusal to extend her return-to-work date in March 2009, the refusal to grant advanced sick leave in March 2009, and the refusal to grant LWOP in March 2009. *See* W-1 ID at 14-15, 18-21. For the reasons discussed below, we find that the administrative judge's analysis of the clear and convincing standard in these actions was incomplete.

¶25    In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider the following factors: the strength of the agency's evidence in support of its action; the existence and strength of any

---

[4] The appellant describes her reassignment as a "constructive demotion," on the theory that she entered the settlement agreement of her EEO claim without knowing that she would be reassigned to a nonsupervisory position with a lower pay cap. *See* RAF, Tab 52, Exs. EB-EC; RAF, Tab 64, Ex. BG. However, neither a reduction in responsibility, nor a possible loss of future pay, constitutes an appealable demotion, constructive or otherwise. *McEnery v. Merit Systems Protection* Board, 963 F.2d 1512, 1514-15 (Fed. Cir. 1992). The constructive demotion doctrine is limited to cases in which the employee: (1) was reassigned from a position which, due to issuance of a new classification standard or correction of a classification error, was worth a higher grade; (2) met the legal and qualification requirements for promotion to the higher grade; and (3) was permanently reassigned to a position classified at a grade level lower than the grade level to which she would otherwise have been promoted. *Russell v. Department of the Navy*, 6 M.S.P.R. 698, 711 (1981); *see Hogan v. Department of the Navy*, 218 F.3d 1361, 1364 (Fed. Cir. 2000). These elements are not present here. Nonetheless, a reassignment is a personnel action for purposes of the WPA. *See* 5 U.S.C. § 2302(a)(2)(A)(iv).

motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). Our reviewing court has further clarified that "[e]vidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion." *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

¶26   In finding that the agency met its burden as to the appellant's November 2007 reassignment, the administrative judge relied entirely on his finding that the reassignment was consistent with the terms of the October 2007 settlement agreement. W-1 ID at 13-14. The record reflects that the agency complied with the agreement insofar as it provided for the appellant's reassignment "to a position comparable with her current grade and salary" with the Small Business Office. RAF, Tab 64, Ex. BE. However, that fact alone does not amount to clear and convincing evidence that the agency would have effected that particular reassignment—which resulted in the removal of the appellant's supervisory duties and a reduction in pay cap—in the absence of her whistleblowing activity. To determine whether that is so, it is necessary to consider evidence beyond the settlement agreement, including evidence, if any, tending to show that the agency would have otherwise effected another reassignment consistent with the agreement. *See Whitmore*, 680 F.3d at 1368.

¶27   Regarding the agency's refusal in March 2009, to extend the appellant's return-to-work date or grant her requests for advanced sick leave or LWOP, the administrative judge again relied solely on evidence tending to support the agency's actions. W-1 ID at 18-21. It is true that these actions *may* have been reasonable, given the appellant's failure to return to work on the previous dates projected by Dr. B.M. However, in determining whether the agency would have

taken the actions in the absence of the whistleblowing activity, the administrative judge did not consider the possibility that the appellant's extended absences might never have occurred but for the agency's alleged retaliatory actions in creating a hostile work environment. *See Whitmore*, 680 F.3d at 1376. On remand, the administrative judge should consider this possibility and examine any supporting evidence. *See id.*

## MSPB Docket No. AT-0752-11-0634-I-2

Charges

¶28        As to the AWOL charge, is undisputed that the appellant was absent on all the dates and for all the hours for which she was charged AWOL and that the agency did not authorize those absences. However, where an employee has requested leave to cover her absences, an AWOL charge will be sustained only if the agency establishes that her requests were properly denied. *Ferguson v. Department of the Navy*, 43 M.S.P.R. 143, 144 (1990).[5] If the employee requested LWOP for the periods when she was placed in an AWOL status, the Board will examine the record as a whole to determine if the denial of LWOP was reasonable under the circumstances. *Joyner v. Department of the Navy*, 57 M.S.P.R. 154, 159 (1993).

¶29        Ordinarily, when an employee who is incapacitated for duty has exhausted all of her leave, an agency may properly deny her LWOP request where there is no foreseeable end in sight to her absences and where those absences are a burden

---

[5] To prove an AWOL charge, an agency must establish "that the employee was absent, and that his absence was not authorized *or* that his request for leave was properly denied." *Little v. Department of Transportation*, 112 M.S.P.R. 224, ¶ 6 (2009) (emphasis added); *see Wesley v. U.S. Postal Service*, 94 M.S.P.R. 277, ¶ 14 (2003) (same). Read literally, this phrasing would suggest that an agency could prove an AWOL charge merely by showing that it did not authorize the employee's absences, even if the employee made a request for leave that was *not* properly denied. This is not the case. *See Ferguson*, 43 M.S.P.R. at 144. More precisely, to prove an AWOL charge, an agency must demonstrate that the employee was absent without authorization and, if the employee requested leave, that the request was properly denied.

on the agency. *Id*. In this case, however, the appellant contends that she was constructively suspended during the period she was charged with AWOL. If so, this would entail not only that she had no meaningful choice concerning those absences, but also that her lack of choice was the result of the agency's wrongful actions. *See Bean*, 120 M.S.P.R. 397, ¶ 8. We find that it would be inherently unreasonable for an agency to deny LWOP to cover absences for which the agency was culpable. Accordingly, should the administrative judge determine on remand that the appellant was constructively suspended during the period for which she was charged AWOL, the charge must be reversed.

¶30    We next turn to the charge of excessive absences. In the specification under that charge, the agency cited the entire period of the appellant's absences from August 18, 2008, through August 14, 2009. These absences include 1,192 hours of approved leave, of which 480 were covered by the FMLA, as well as the 800 AWOL hours with which she was separately charged. RAF, Tab 9, Subtab 4d. As a general rule, an agency may not take an adverse action based on an employee's use of approved leave. *Bair v. Department of Defense*, 117 M.S.P.R. 374, ¶ 5 (2012). However, an exception may exist where the following criteria are met: (1) the employee was absent for compelling reasons beyond her control so that agency approval or disapproval of leave was immaterial because she could not be on the job; (2) the absences continued beyond a reasonable time, and the agency warned the employee that an adverse action could be taken unless she became available for duty on a regular full-time or part-time basis; and (3) the agency showed that the position needed to be filled by an employee available for duty on a regular, full-time or part-time basis. *Cook v. Department of the Army*, 18 M.S.P.R. 610, 611-12 (1984). This exception is applicable only under unusual circumstances, i.e., where the employee is unable to return to duty because of the continuing effects of illness or injury. *Id*. In addition, we have held that an employee may not be disciplined for use of leave

covered by the FMLA. *McCauley v. Department of the Interior*, [116 M.S.P.R. 484](#), ¶ 11 (2011).

¶31  Of the 1,192 hours of approved leave cited in the proposal notice, 480 hours were covered by the FMLA, and therefore cannot support the charge. *See id*. As for the remainder, we find that the agency failed to establish element (2) of the *Cook* exception. The record reflects that D.B. notified the appellant on several occasions that failure to come to work when not in an approved leave status would result in her placement in an AWOL status, which in turn could lead to an adverse action. RAF, Tab 8, Subtabs 4m, 4o, 4r. Yet, it was not until April 3, 2009, that D.B. warned the appellant that she could be removed not only for AWOL, but also for "excessive absenteeism," which might be understood to include approved leave. *Id*., Subtab 4*l*. That warning came too late, though, for by then the agency had ceased to approve additional leave, and the appellant was in an AWOL status in any event. Under these circumstances, we find that the appellant did not receive the notice required for the *Cook* exception to apply. *See Fox v. Department of the Army*, [120 M.S.P.R. 529](#), ¶ 32 (2014). Thus, the excessive absences charge cannot be sustained as to any of her approved absences.

¶32  Regarding the 800 hours of AWOL, it has been suggested in dicta that periods of AWOL may be included in a charge of excessive absences. *McCauley,* [116 M.S.P.R. 484](#), ¶ 10.[6] However, while it is true that AWOL is a type of absence, the *Cook* holding was based on provisions of the Federal Personnel Manual (FPM) specifically concerned with excessive use of *approved* leave. *See Cook*, 18 M.S.P.R. at 611-12. Although the FPM was abolished in 1993, the *Cook* holding has survived for decades since, and we see no grounds for revising

---

[6] The excessive absences charge in *McCauley* did not include the AWOL periods with which the appellant in that case was separately charged. *McCauley*, [116 M.S.P.R. 484](#), ¶ 2.

it now.  Accordingly, to the extent that periods of AWOL are included within a charge of excessive absences, we will not consider those periods under the *Cook* standard, but instead will consider them as an AWOL charge.  Here, the 800 AWOL hours cited in the excessive absences charge, when construed as a charge of AWOL, are entirely duplicative of the first charge, and we therefore give them no further consideration.  In sum, the second charge is not sustained.

¶33    In addressing the agency's final charge, unavailability for duty with no foreseeable end, the administrative judge again stated the *Cook* elements.  *See* RAF ID at 9.  This is understandable, as the term "unavailability for duty" may suggest a charge of excessive absences, to which the *Cook* standard would apply.  *See Edwards v. Department of Transportation*, 109 M.S.P.R. 579, ¶ 14 (2008).  However, after reviewing the proposal notice and decision letter, we conclude that the third charge was not based on the appellant's past absences, but rather her continuing inability to return to work.  *See id.*

¶34    An agency may remove an employee if she is unable, because of a medical condition, to perform the duties of her position.  *Id.*, ¶ 15.  In finding removal warranted based on an employee's inability to work due to incapacitation, the Board has relied on the absence of any foreseeable end to the unavailability.  *Id.*, ¶ 17.  Here, it is undisputed that the appellant was medically unable to return to the workplace.  Furthermore, considering the appellant's repeated failure to return to work on the dates projected by Dr. B.M., and Dr. J.H.'s doubt that she would ever return to work in the same capacity, we find that the agency has shown by preponderant evidence that there was no foreseeable end to the appellant's medical inability to perform her duties.  The third charge therefore is sustained.

Title VII Claims

¶35    The appellant contends that the agency removed her based on race and sex discrimination and in retaliation for her protected EEO activity, including the April 2009 complaint in which she named D.B. as the discriminating official.

I-1 IAF, Tab 4. During the pendency of this appeal, the U.S. Supreme Court issued its decision in *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 2534 (2013), in which it held that a plaintiff claiming prohibited retaliation under 42 U.S.C. § 2000e-3(a) must show that the contested personnel action would not have occurred but for the retaliatory motive. The administrative judge did not address *Nassar* in the initial decision, and the Board has not yet issued a precedential decision addressing the possible effect of *Nassar* on our proceedings. Accordingly, we take this opportunity to clarify the standards and procedures governing our adjudication of Title VII claims, including (but not limited to) retaliation.

> *42 U.S.C. § 2000e-16 prohibits retaliation as well as status-based discrimination.*

¶36    The Equal Employment Opportunity Act of 1972, Pub. L. No. 92-261, 86 Stat. 111 (1972), extended Title VII to cover Federal employment, adding a new section 717, codified at 42 U.S.C. § 2000e-16. The basic anti-discrimination standard for Federal employment is set forth at subsection (a), which broadly provides that personnel actions taken by Federal agencies "shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a); *see West v. Gibson*, 527 U.S. 212, 214 (1999). The courts, the Equal Employment Opportunity Commission (EEOC or Commission), and the Board have long assumed that section 2000e-16(a) incorporated the existing provision at 42 U.S.C. § 2000e-3(a), which prohibits private sector employers from retaliating against employees or applicants "because" of the exercise of Title VII rights. *See Hale v. Marsh*, 808 F.2d 616, 619 (7th Cir. 1986); *Ayon v. Sampson*, 547 F.2d 446, 449-50 (9th Cir. 1976); *Martin v. Department of the Air Force*, 73 M.S.P.R. 590, 594 (1997); *Algarin v. Department of the Navy*, EEOC Appeal No. B01780106, 1980 WL 351765, at *1 (Mar. 4, 1980). However, the Supreme Court has clarified that 42 U.S.C. § 2000e-16 does not in fact incorporate 42 U.S.C. § 2000e-3(a). *Gomez-Perez v.*

*Potter*, 553 U.S. 474, 487-88, 488 n.4 (2008). The Federal sector provision instead "contains a broad prohibition of 'discrimination,' rather than a list of specific prohibited personnel practices." *Id.* at 487. Hence, EEO retaliation claims in the Federal sector do not implicate the statute at issue in *Nassar*.

¶37 The Court did not have occasion in *Gomez-Perez* to definitively state whether 42 U.S.C. § 2000e-16 itself prohibits retaliation in addition to status-based discrimination. However, the Court did consider that question regarding the parallel Federal sector provision of the Age Discrimination in Employment Act (ADEA), found at 29 U.S.C. § 633a(a). That statute, which the Court found to have been patterned directly after 42 U.S.C. § 2000e-16(a), similarly provides that personnel actions by Federal agencies "shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a); *see Gomez-Perez*, 553 U.S. at 487-88. The Court held that the requirement that such actions "be made free" from age discrimination is itself sufficiently broad to prohibit retaliation against an employee who complained of age discrimination. *Gomez-Perez*, 553 U.S. at 491. We conclude the same is true of 42 U.S.C. § 2000e-16.

> *A violation of 42 U.S.C. § 2000e-16 is established where discrimination or retaliation is a motivating factor in the contested personnel action.*

¶38 The next question to be considered is whether an appellant alleging a violation of 42 U.S.C. § 2000e-16 must show that improper consideration was the "but for" cause of the contested personnel action, as would be the case in a private sector retaliation claim under 42 U.S.C. § 2000e-3(a), or whether a less stringent causation standard should apply. This question is of particular importance given that most adverse actions against Federal employees are at least ostensibly taken for cause. Not infrequently, this leads to a dual motivation scenario in which the contested action may appear to have been taken for both prohibited reasons and legitimate reasons, such as sustained misconduct.

¶39        Again, we may draw a useful analogy to the ADEA.  In *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), the Court considered whether a "but for" causation requirement should apply to claims of age discrimination arising under 29 U.S.C. § 623(a)(1), which prohibits discrimination "because of age" in private sector employment.  Examining the text of 29 U.S.C. § 623(a)(1), the Court reasoned that "the ordinary meaning . . . of 'because of' age is that age was the 'reason' that the employer decided to act."  *Id*. at 176.  Accordingly, the Court held, the prohibition against employment discrimination "because of age" should be read as requiring the plaintiff to demonstrate "but for" causation.  *Id*.

¶40        However, as noted above, Federal sector ADEA claims are governed by a different statute, 29 U.S.C. § 633a(a), which does not include the term "because of," but instead broadly provides that personnel actions "shall be made free from any discrimination based on age."  In *Ford v. Mabus*, 629 F.3d 198 (D.C. Cir. 2010), the U.S. Court of Appeals for the District of Columbia Circuit distinguished *Gross* on those grounds and concluded that a Federal sector employee could prove a violation of 29 U.S.C. § 633a(a) merely by showing that age was *a* factor in the contested personnel action, even if it were not the "but for" cause.  *Id*. at 205-06.  The court further found that, given the statute's sweeping language, it was unnecessary to look for "a particular quantum of influence," such as "substantial" evidence, but rather for "the existence of any influence at all."  *Id*. at 206.  This is so, the court reasoned, because "any amount of discrimination tainting a personnel action, even if not substantial, means that the action was not 'free from any discrimination based on age.'  'Any,' after all, means any."  *Id*. (citing *United States v. Gonzales*, 520 U.S. 1, 5 (1997)).  Shortly thereafter, in *Alotta v. Department of Transportation*, EEOC Appeal No. 0129903865, 2011 WL 2515244 (June 17, 2011), the EEOC reached the same

conclusion on similar grounds, albeit in dicta.[7] In *Wingate v. U.S. Postal Service*, 118 M.S.P.R. 566 (2012), we endorsed the reasoning of *Alotta*, again concluding that a Federal employee may prove age discrimination by showing that age was "a factor" in the personnel action, even if it was not the "but for" cause. *Id*., ¶ 7.

¶41 The requirement of 42 U.S.C. § 2000e-16 that personnel actions by agencies "be made free from any discrimination based on race, color, religion, sex, or national origin" is analogous to the ADEA provision at issue in *Ford*, *Alotta*, and *Wingate*. We therefore conclude that, to establish a violation of 42 U.S.C. § 2000e-16, an appellant need only demonstrate that a prohibited consideration was *a* factor in the contested personnel action. Moreover, because a prohibition against retaliation is inherent in the same statute, the same causation standard also applies to Title VII retaliation claims in the Federal sector. Hence, as with status-based discrimination cases, a violation of 42 U.S.C. § 2000e-16 is established if a prohibited consideration was a motivating factor in the contested personnel action, even if it was not the only reason. *Accord Petitioner v. Department of Interior*, EEOC Appeal No. 0320110050, 2014 WL 3788011, at \*10 n.6 (July 16, 2014), *concurred in and adopted by Davis v. Department of the Interior*, MSPB Docket No. AT-0752-09-0860-E-1, Final Order at 4-6 (Aug. 15, 2014).

> *An appellant may establish a violation of 42 U.S.C. § 2000e-16 using direct evidence or any of three types of circumstantial evidence: "convincing mosaic," comparator, or pretext.*

¶42 In *Troupe v. May Department Stores Company*, 20 F.3d 734 (7th Cir. 1994), a case involving a claim of pregnancy discrimination, the U.S. Court of Appeals for the Seventh Circuit provided a useful taxonomy of the "[d]ifferent kinds and combinations of evidence" that may support an inference that

---

[7] Despite its finding, the EEOC did not undertake a mixed-motive analysis in *Alotta*, but instead applied the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which does require an ultimate showing of "but for" causation.

intentional discrimination or retaliation was a motivating factor in an employment action. *Id.* at 736. One kind is direct evidence, i.e., "evidence that can be interpreted as an acknowledgment of discriminatory intent[.]" *Id.* In addition to direct evidence, the court identified and distinguished three types of circumstantial evidence. The first kind "consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Id.* Considered together, the court explained, such bits and pieces may compose "a convincing mosaic of discrimination." *Id.* at 737. The second kind of circumstantial evidence is comparator evidence, consisting of "evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic . . . on which an employer is forbidden to base a difference in treatment received systematically better treatment." *Id.* at 736. The third kind consists of evidence that the agency's stated reason for its action is "unworthy of belief, a mere pretext for discrimination." *Id.* The court stressed that none of the aforementioned types of evidence, i.e., direct, "convincing mosaic," comparator, or pretext, will be needed in every case. "Each type of evidence," the court explained, "is sufficient by itself . . . to support a judgment for [the employee]; or they can be used together." *Id.*

¶43 In *FitzGerald v. Department of Homeland Security*, 107 M.S.P.R. 666 (2008), we erroneously stated that to establish an EEO reprisal claim using circumstantial evidence, the appellant *must* provide evidence showing a "convincing mosaic" of retaliation against her. *Id.*, ¶ 20. That holding was based on a misreading of *Troupe*, and the Seventh Circuit has itself clarified that "it was not the intention in *Troupe* to promulgate a new standard, whereby circumstantial evidence in a discrimination or retaliation case must . . . have a mosaic-like character." *Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900, 904 (7th Cir. 2006); *see Petitioner v. Department of the Interior*, EEOC Appeal

No. 0320110050, 2014 WL 3788011, at \*10 n.6 (citing *Sylvester*, 453 F.3d at 903).    To the extent we erroneously imposed a "convincing mosaic" requirement, *FitzGerald* and its progeny are hereby overruled.[8]

> *The Board's authority to enforce 42 U.S.C. § 2000e-16 derives from civil service law.*

¶44        While 42 U.S.C. § 2000e-16 sets forth the substantive standard for Title VII claims in the Federal sector, it does not itself authorize the Board to enforce that standard.    Subsection (b) of the statute grants the EEOC the authority to enforce the standard through appropriate remedies, including reinstatement and back pay.    42 U.S.C. § 2000e-16(b).    In addition, the statute contains provisions concerning the courts' enforcement authority.    Subsection (c) provides that, after an agency or the EEOC takes final action on a complaint, or fails to take action within a certain time, the aggrieved employee may bring a "civil action," with the department head named as the defendant.    42 U.S.C. § 2000e-16(c).    Section (d) further provides that such civil actions shall be governed by the provisions of 42 U.S.C. § 2000e-5(f) through (k), "as applicable."    42 U.S.C. § 2000e-16(d). Those incorporated provisions in turn assign jurisdiction to an appropriate district court, *see* 42 U.S.C. § 2000e-5(f)(3), and provide that the court may, subject to certain restrictions, award remedies including injunctive relief, reinstatement, back    pay,    and    attorney    fees,    *see*    42    U.S.C.    § 2000e-5(g),    (k).

---

[8] Subsequent cases erroneously imposing a "convincing mosaic" requirement include *Quinlan v. Department of Homeland Security*, 118 M.S.P.R. 362 (2012); *Rhee v. Department of the Treasury*, 117 M.S.P.R. 640 (2012); *Agbaniyaka v. Department of the Treasury*, 115 M.S.P.R. 130 (2010), *aff'd*, 484 F. App'x 545 (Fed. Cir. 2012); *Crump v. Department of Veterans Affairs*, 114 M.S.P.R. 224 (2010); *Marshall v. Department of Veterans Affairs*, 111 M.S.P.R. 5 (2008); and *Kohler v. Department of the Navy*, 108 M.S.P.R. 510 (2008).

¶45        By contrast, there is no comparable provision in the statute—or, for that matter, anywhere else in Title VII—granting enforcement authority to the Board.[9] The Board's authority to adjudicate and remedy alleged violations of 42 U.S.C. § 2000e-16 is instead a matter of civil service law.  One source of that authority is 5 U.S.C. § 7702(a)(1)(B), which provides that in any case where an appellant affected by an action appealable to the Board alleges that a basis for the action was discrimination prohibited by 42 U.S.C. § 2000e-16, the Board shall "decide both the issue of discrimination and the appealable action[.]"  The statute further specifies that the issues are to be decided "*in accordance with the Board's appellate procedures* under [5 U.S.C. §§ 7701 and 7702]."  5 U.S.C. § 7702(a)(1)(B) (emphasis added).  Hence, while the substantive "issue of discrimination" is defined by the standard set forth by 42 U.S.C. § 2000e-16(a), it is civil service law that defines the procedures by which we decide whether a violation of that statute has taken place.

¶46        Significantly, the Board's procedures do not provide for summary judgment.  *Crispin v. Department of Commerce*, 732 F.2d 919, 922 (Fed. Cir. 1984); *see* 5 U.S.C. § 7701(a)(1) (providing that an appellant "shall have the right to a hearing").[10]  In determining if summary judgment is appropriate in a case where the plaintiff alleges that the contested personnel action is motivated solely by discrimination, the courts and the EEOC have traditionally followed the burden-shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  However, because the Board has no authority to grant summary

[9] Indeed, it was the intent of Congress in passing the Equal Employment Opportunity Act of 1972 to transfer to the EEOC the enforcement authority formerly vested in the Board's predecessor agency, the Civil Service Commission.  *See* H.R. Rep. No. 92-238, at 2158-60, *reprinted in* 1972 U.S.C.A.A.N. 2137, 2160.

[10] In *Redd v. U.S. Postal Service*, 101 M.S.P.R. 182, ¶¶ 10-12 (2006), we declined to follow *Crispin* based on the erroneous assumption that our procedures for deciding discrimination claims were a matter of substantive discrimination law.  *Redd* is hereby overruled.

judgment, and decides discrimination claims only after the record is complete, the *McDonnell Douglas* framework has no application to our proceedings in this or any other appeal. *See Jackson v. U.S. Postal Service*, 79 M.S.P.R. 46, 51-52 (1998).

¶47     As for remedies, our authority to award reinstatement and back pay derives from 5 U.S.C. § 7701(c)(2)(B), which provides that the Board will not sustain an agency's decision if the appellant "shows that the decision was based on any prohibited personnel practice described in section 2302(b) of this title." Section 2302(b)(1) in turn provides, inter alia, that an agency employee with "authority to take, direct others to take, recommend,[11] or approve any personnel action, shall not, with respect to such authority . . . discriminate for or against any employee or applicant for employment . . . on the basis of race, color, religion, sex, or national origin, as prohibited under [42 U.S.C. § 2000e-16]." Accordingly, if an appellant proves that the action on appeal was "based" on a violation of 42 U.S.C. § 2000e-16, which constitutes a prohibited personnel action under 5 U.S.C. § 2302(b)(1), the Board will order the agency to cancel the action and return the appellant to the status quo ante. *See* 5 U.S.C. § 1204(a) (granting the Board the authority to adjudicate and take final action on matters within its jurisdiction and to order compliance with its actions).

> *A violation of 42 U.S.C. § 2000e-16 warrants reversal under 5 U.S.C. § 7701(c)(2)(B) only if the agency would not have taken the action in the absence of the discriminatory or retaliatory motive.*

¶48     The term "based," as used in 5 U.S.C. § 7701(c)(2)(B), "connotes that the matter referred to is the most important element." *Gerlach v. Federal Trade Commission*, 9 M.S.P.R. 268, 273 (1981). Accordingly, 5 U.S.C. § 7701(c)(2)(B) mandates reversal of the agency's action only where the Board has determined

---

[11] Because a proposing official is an agency employee with authority to "recommend" a personnel action, we agree with the appellant that the administrative judge erred in failing to consider whether D.B. had a retaliatory motive.

that a prohibited personnel practice was *the* "motivating factor" or "real reason" for the action. *Id.* at 274. Hence, while the Board will find a violation of 42 U.S.C. § 2000e-16, and consequently a prohibited personnel practice under 5 U.S.C. § 2302(b)(1), if the appellant shows that a discriminatory or retaliatory motive was *a* factor in the contested action, such a finding will not necessarily result in reversal. Rather, the Board will reverse the action on that basis if the prohibited personnel practice was the "but for" cause of the action, i.e., if the agency would not have taken the same action in the absence of the discriminatory or retaliatory motive. *See Dorsey v. Department of the Air Force*, 78 M.S.P.R. 439, 450-51 (1998); *Madison v. Department of the Air Force*, 32 M.S.P.R. 465, 477 (1987); *cf. Gerlach*, 9 M.S.P.R. at 270, 273 (concerning alleged retaliation for filing a grievance).[12]

> *In determining whether relief is appropriate under 5 U.S.C. § 7701(c)(2)(B), the Board will apply the Mt. Healthy test.*

¶49    For cases involving allegations of discrimination and retaliation not covered by the WPA, the Board has adopted the analytical framework of *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), for determining whether reversal of the action is warranted under 5 U.S.C. § 7701(c)(2)(B). *Gerlach*, 9 M.S.P.R. at 276; *see Dorsey*, 78 M.S.P.R. at 450-51; *Madison*, 32 M.S.P.R. at 477. In *Mt. Healthy*, a case involving a claim of retaliation for protected First Amendment activity, the Court enunciated a two-part test to be applied in determining whether remedial action was justified. 429 U.S. at 287. First, the Court explained, the employee must show that the protected conduct was a substantial or motivating factor in the contested action. *Id.* If the employee carries that burden, then the burden shifts to the employer to

---

[12] To the extent a retaliation for protected EEO activity claim also may be construed as a prohibited personnel practice under 5 U.S.C. § 2302(b)(9)(A)(ii), the same standard applies. *See Gerlach*, 9 M.S.P.R. at 273.

prove by a preponderance of the evidence that it would have taken the same action even if the protected conduct had not taken place. *Id*.

¶50     The *Mt. Healthy* test assures that an employee who belongs to a protected group or has engaged in protected activity is not thereby granted immunity from the ordinary consequences of misconduct or poor performance. *Mt. Healthy*, 429 U.S. at 285-86; *see Gerlach*, 9 M.S.P.R. at 275. In keeping with that aim, the allocation of the burdens under *Mt. Healthy* is both equitable and reasonable. Accordingly, we reaffirm that the Board will adhere to the *Mt. Healthy* test in cases involving discrimination or retaliation allegations under 42 U.S.C. § 2000e-16. *See Dorsey*, 78 M.S.P.R. at 450-51; *Madison*, 32 M.S.P.R. at 477.[13]

¶51     In sum, when an appellant asserts an affirmative defense of discrimination or retaliation under 42 U.S.C. § 2000e-16, the Board first will inquire whether the appellant has shown by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action. Such a showing is sufficient to establish that the agency violated 42 U.S.C. § 2000e-16, thereby

---

[13] The application of the *Mt. Healthy* test to discrimination and retaliation claims under 42 U.S.C. § 2000e-16 is in some respects analogous to the burden-shifting scheme for status-based Title VII discrimination claims in the private sector. Under 42 U.S.C. § 2000e-2(m), "an unlawful employment practice is established when the complaining party demonstrates that color, religion, sex, or national origin was a motivating factor in any employment practice, even though other factors also motivated the practice." Upon that showing, the burden then shifts to the employer to demonstrate that it "would have taken the same action in the absence of the impermissible motivating factor," in which case the plaintiff will not receive damages or a reinstatement order, but may nonetheless receive a limited remedy including declaratory relief, injunctive relief, and some attorney fees. 42 U.S.C. § 2000e-5(g)(2)(B). However, the scheme set forth at 42 U.S.C. §§ 2000e-2(m) and 2000e-5(g)(2)(B) does not apply to our adjudication of claims under 42 U.S.C. § 2000e-16. First, because 42 U.S.C. § 2000e-16 broadly prohibits discrimination without incorporating specific prohibited practices, such as the ban on retaliation at 42 U.S.C. § 2000e-3(a), *see Gomez-Perez*, 553 U.S. at 487, it does not (and need not) incorporate 42 U.S.C. § 2000e-2(a) and (m). Moreover, as discussed above, the enforcement provisions incorporated by 42 U.S.C. § 2000e-16, including 42 U.S.C. § 2000e-5(g)(2)(B), do not control our proceedings, which are instead governed by the appellate procedures set forth at 5 U.S.C. §§ 7701 and 7702.

committing a prohibited personnel practice under 5 U.S.C. § 2302(b)(1). In making her initial showing, an appellant may rely on direct evidence or any of the three types of circumstantial evidence described in *Troupe*, either alone or in combination. If the appellant meets her burden, we then will inquire whether the agency has shown by preponderant evidence that the action was not based on the prohibited personnel practice, i.e., that it still would have taken the contested action in the absence of the discriminatory or retaliatory motive. If we find that the agency has made that showing, its violation of 42 U.S.C. § 2000e-16 will not require reversal of the action. On remand, the administrative judge should consider the appellant's Title VII claims consistent with the above analysis.

Whistleblowing Reprisal

¶52        The appellant's affirmative defense of whistleblowing reprisal also will require further consideration. First, the administrative judge did not consider the appellant's disclosure concerning the DD Form 2579. Although the appellant did not address that disclosure in her OSC complaint, there is no exhaustion requirement concerning her whistleblowing retaliation defense in the removal appeal, and the DD Form 2579 disclosure therefore should have been considered in that context. Furthermore, in finding that the agency showed by clear and convincing evidence that it would have removed the appellant in the absence of her disclosures, the administrative judge essentially relied on his finding that all three charges were proven. RAF ID at 17-18. We do not sustain the excessive absences charge, however, and the disposition of the AWOL charge depends upon the outcome of the appellant's constructive suspension claim. Moreover, the administrative judge did not address the possibility that the appellant's incapacitation, which ultimately led to her removal, was itself the product of whistleblowing reprisal. *See Whitmore*, 680 F.3d at 1376. Accordingly, the administrative judge should consider again on remand whether, in light of all pertinent record evidence, the agency showed by clear and convincing evidence

that it would have removed the appellant in the absence of her protected whistleblowing activity.

ORDER

¶53      The joined appeal is remanded to the regional office for further adjudication consistent with this Opinion and Order.


FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.